# Exhibit A



**BULLETIN NO.: MGR-10-011**

**United States Department of Agriculture**

Farm and Foreign Agricultural Services

Risk Management Agency

1400 Independence Avenue, SW Stop 0801 Washington, DC 20250-0801

**TO:**  All Approved Insurance Providers
All Risk Management Field Offices
All Other Interested Parties

**FROM:**  William J. Murphy  */s/ Barbara M. Leach, for*  *9/13/2010*
Administrator

**SUBJECT:**  Guidance Regarding SRA Section III(a)(4)—Agent Compensation

**BACKGROUND**:

In negotiating the 2011 Standard Reinsurance Agreement (SRA), approved insurance providers (AIPs) and interested other persons, including managing general agents (MGAs), raised questions regarding compensation provided to agents under section III(a)(4) of the SRA. Additional questions are expected as AIPs begin implementing the provisions of section III(a)(4). This bulletin provides guidance for the 2011 and subsequent reinsurance years involving those provisions. Any reference to an AIP includes an MGA, if applicable, and any reference to an agent includes an agency. Also, this bulletin addresses other issues pertaining to compensation under section III(a)(4) of the SRA.

**ACTION**:

RMA has categorized items that do or do not constitute compensation as provided below:

1. The following items (looking at the characteristics, not the name) constitute compensation for the direct sale and service of eligible crop insurance contracts:

   a. Commissions.

   b. Salary.

   c. Profit Sharing.

   d. Bonuses.

   e. Consulting Fees.

 The Risk Management Agency Administers And Oversees All Programs Authorized Under The Federal Crop Insurance Corporation

USDA is an Equal Opportunity Provider and Employer.

**BULLETIN NO.: MGR-10-011**                              **Page 2**

    f.  Loans (unless meeting the criteria in paragraph 2).

    g.  Advance Payments.

    h.  Deferred Payments.

    i.  All amounts paid to agents for advertising and promotion of the agent.

    j.  Amounts paid for processing costs that do not meet the criteria established in paragraph 11.

    k.  Insurance coverage provided by AIPs to agents, including errors and omission, accident, and life insurance.

    l.  An AIP's payment to an agent for the license fees for software, office equipment (including, but not limited to, computers), subscriptions, and meeting registration fees.

    m.  Unless the total cumulative costs are less than $600 for the reinsurance year, an AIP's cost benefitting any individual agent for:

        i.  Sponsoring agent appreciation, recognition, reward, or similar trips;

        ii.  Golf, hunting, fishing, or other outings held in conjunction with training events;

        iii.  Trips or entertainment provided or in any way offered to individuals, including the unreimbursed portions thereof if an AIP or affiliate charges less than the full cost of the trips or entertainment (whether or not such costs would be considered ordinary or necessary for income tax purposes); or

        iv.  Any other entertainment, promotional gifts, or benefits.

    n.  Any other payments made by the AIP to the agent or any business owned in whole or in part by the agent, except as specified in paragraph 2 or paragraph 11.

2.      The following items do not constitute compensation for the direct sale and service of eligible crop insurance contracts:

    a.  Loans made on or before June 30, 2010.

    b.  Loans made on commercially reasonable terms as determined by FCIC (e.g., at a rate of interest, of a duration, and with repayment terms typical of commercial loans) and being repaid in accordance with such terms.

**BULLETIN NO.: MGR-10-011**                                      **Page 3**

    c.  Payments related to any line of insurance not reinsured by FCIC under the SRA (unless such payments are higher than industry standards for such lines of insurance).

    d.  Training, including continuing education expenses and incidental expenses directly associated with such training (e.g., meals, refreshments, and receptions), provided that the costs incurred are reasonable.

    e.  Promotional items of nominal value (e.g., pens, pencils, calendars, caps, and golf balls).

    f.  An AIP's actual costs (e.g., room rental and refreshments) paid to a third party (not an agent or relative of an agent) for educational producer meetings on the value of crop insurance as a risk management tool.

    g.  An AIPs payment to a third party for advertising or promotion of the agent.

    h.  An AIP's payment to a third party for license fees for software, office equipment (including, but not limited to, computers), and other items necessary to operate the business.

    i.  Benefits that are required by law as specified in paragraph 10.

    j.  Amounts up to 4 percent of the A&O subsidy and CAT LAE paid for processing costs for a State for the reinsurance year that meet the criteria established in paragraph 11.

3.      The phrase "direct sale and service of any eligible crop insurance contract" does not include loss adjustment costs.

4.      If an AIP employee is an agent and the activity as an agent represents a minority of the employee's responsibilities and time, only the portion of the employee's compensation related to performing agent functions will be considered to be for the direct sale and service of eligible crop insurance contracts.  If the AIP cannot show the apportionment of the compensation between the duties of the employee, the employee's total compensation will be considered to be for the direct sale and service of eligible crop insurance contracts.

5.      Compensation subject to the limitation of section III(a)(4)(B) of the SRA (i.e., 80 percent of A&O and CAT LAE by State) may be paid anytime during or after the reinsurance year.  If the amount of A&O later is reduced under section III(a)(2) of the SRA and the reduction results in an AIP's existing payments exceeding the limitation contained in section III(a)(4)(B) of the SRA, the AIP will be granted 90 days in which to recover payments in the amount necessary to be in compliance with the limitations under SRA.

**BULLETIN NO.: MGR-10-011**                                    **Page 4**

6.      Compensation subject to the limitation of section III(a)(4)(C) of the SRA (i.e., 100 percent of A&O and CAT LAE by State) may only be paid after the first annual settlement between FCIC and the AIP for the reinsurance year.

7.      Except as provided in paragraph 8, if the amount of compensation is determined in reference to the premium and or losses of a particular reinsurance year, the compensation shall be included in calculating the limitations for that reinsurance year under sections III(a)(4)(B) and (C) of the SRA, regardless of the date on which the agreement was made or the compensation paid.  For example, if the amount of compensation is based upon 2010 premium or 2010 loss ratio (e.g., profit sharing agreements or agreements to retain 2010 eligible crop insurance contracts with a particular AIP into the next reinsurance year), the compensation is deemed 2010 compensation even if it is not paid until the 2011 reinsurance year.  Conversely, if the amount of compensation is based upon 2011 premium or 2011 loss ratio, the compensation is deemed 2011 compensation even if the agreement under which the compensation is paid was made before July 1, 2010.

8.      For any arrangement between an AIP and an agent entered into or amended after July 1, 2010, that provides compensation referencing 2010 or any previous reinsurance year, such compensation is deemed to be for the 2011 reinsurance year.

9.      In accordance with section III(a)(4)(C)(ii) of the SRA, for purposes of determining compensation limitations, any "snap back" payments are excluded, and thus are not utilized to calculate the 80 percent and 100 percent limitations.

10.     The definition of "compensation" in the SRA uses two specific terms about which clarification has been sought: "non-monetary benefits" and "except for those benefits required by law."  As delineated above, there are direct or indirect payments in the form of cash paid to the agent.  Those are monetary benefits.  There are other benefits, such as trips, computers, advertising, etc., that are non-cash items that provides a benefit to the agent.  The treatment of non-monetary benefits has been included in paragraph 2.  Related to this issue are the "benefits required by law."  For purposes of meeting SRA requirements, benefits required by law are the **employer's** share of: Social Security, Medicare, unemployment insurance payments, and health insurance, if mandated in Federal, State, or local law.  In reporting compensation:

   a. For AIP employees, the AIP may exclude its share of the payment of the benefits required by law when reporting compensation in the Plan of Operations, according to item IV(f) of SRA Appendix II.

   b. With respect to independent agents, the employer, whether a self-employed agent or an affiliate that contracts with the agent, may, at the end of each reinsurance year, report to the AIP the **employer's** (not to include the employee's) share of the amount of benefits required by law paid for each agent relating to eligible crop insurance contracts reinsured under the SRA for that AIP.  If the employer writes multiple lines of insurance other than that reinsured under the SRA, writes for

**BULLETIN NO.: MGR-10-011**                                               **Page 5**

multiple AIPs, or has sources of revenue other than insurance, the report must show in detail the method for allocating total costs required by law across AIPs, lines of insurance, and other sources of revenue.  The report must be certified as accurate by the employer.  AIPs may report these amounts in their Plan of Operations, according to item IV(f) of SRA Appendix II.  Documented amounts paid by agents and affiliates for benefits required by law incurred for the sale and service of eligible crop insurance contracts under the SRA will not be subject to the limitations of section III(a)(4) of the SRA.

11.      Processing costs are amounts incurred internally or paid to agents or affiliates for processing any part of the AIP's book of business (e.g., applications, production reports, and acreage reports).  AIPs may report processing costs paid to agents and affiliates in their Plan of Operations, according to item IV(f) of SRA Appendix II.  Such payments reported by an AIP up to 4 percent of the A&O subsidy and CAT LAE for a State for the reinsurance year will be excluded from the limitations on compensation in section III(a)(4) of the SRA, provided the AIP can provide to RMA, upon request, detailed documentation supporting such payments.  In agreements with agents and affiliates, that portion of any payment by the AIP to the agent or affiliate for processing must be clearly specified.

12.      In accordance with section III(a)(4)(E) of the SRA, if RMA determines that an AIP or its MGA has employed a scheme or device to avoid the limitations imposed by section III(a)(4) of the SRA, all payments by the AIP relating to the scheme or device will be deemed by RMA to be compensation subject to the limitations of section III(a)(4), any eligible crop insurance contracts relating to the scheme or device will be subject to the denial of reinsurance, and the AIP will be subject to other sanctions set forth in section IV(h) and 7 C.F.R. part 400, subpart R.  It is impossible to list all potential schemes and devices.  Nevertheless, RMA has been made aware of several hypothetical situations that would constitute a scheme or device under section III(a)(4)(E).  RMA offers these examples for general information; the list is not intended to be comprehensive:

   a.  Offering commission rates to an agent for private crop-hail business that exceed usual and customary rates contingent on an AIP receiving that agent's book of eligible crop insurance contracts reinsured under the SRA.

   b.  The purchase by an AIP of an insurance agency under terms and conditions that would, in effect, manipulate and inflate the compensation the agency owner or the agency's agents receive beyond that which it would receive under the SRA had the agency not changed ownership.  Terms of such a scheme might include, for instance, an AIP purchasing an agency for an amount in excess of market value and later allowing the seller of the agency to reacquire the business for a relatively low value, thereby circumventing the limitation on agent compensation.

   c.  The purchase of an agent's book of business with terms that allows annual payments to be based on the premium volume or the performance of the book of business for which the payment is being made.

**BULLETIN NO.: MGR-10-011**                                    **Page 6**

d.  The purchase of a book of business owned by a person other than an agent, who in turn, provides all or part of the funds received to the agents employed or contracted by the person.

e.  To acquire an agent's book of business, an AIP hires, at an inflated wage, the agent or relative of the agent for a position that does not involve the direct sale or service of eligible crop insurance contracts.

f.  Establishing or using a third party (such as a commodity group, a marketing specialist, or data processing entity) to channel payments to agents or agencies to supplement compensation that is subject to the SRA limitations.

g.  Establishing or using a third party (such as a commodity group, a marketing specialist, or data processing entity) to provide services to producers that are normally performed by an agent or agency.

h.  Back-dating or forward-dating documents related to agent or third-party compensation arrangements to shift compensation from one reinsurance year to another.

13.     Because section III(a)(4) is new and raises many complex issues, RMA will be mindful of the materiality and related factors in 7 C.F.R. § 400.454(c)(2) as it and AIPs become familiar with RMA's positions.  Nevertheless, use of an intentional scheme or device to avoid compliance will be deemed a serious violation of the SRA.

14.     RMA recognizes that the foregoing does not exhaust the subject of determining what is or is not compensation.  By reference to the guidance provided above, and in working with financial and tax accountants and advisors, AIPs should be able to develop internal operating principles for reasonably administering the SRA limitations on agent compensation.  RMA reminds AIPs that they must keep in mind both the specific text of section III(a)(4) of the SRA, the guidance provided in this bulletin, and RMA's purpose in limiting agent compensation (in particular, preserving the solvency of AIPs).

15.  In view of questions that may remain after this bulletin is issued, RMA will schedule periodic meetings to review and evaluate the administration and enforcement of agent compensation provisions of the SRA.