# Exhibit B



**United States
Department of
Agriculture**

Farm and Foreign
Agricultural
Services

Risk
Management
Agency

1400 Independence
Avenue, SW
Stop 0801
Washington, DC
20250-0801

**BULLETIN NO:  MGR-10-011.1**

**TO:**    All Approved Insurance Providers
All Risk Management Field Offices
All Other Interested Parties

**FROM:**    William J. Murphy    */s/ William J. Murphy*    *10/29/2010*
Administrator

**SUBJECT:**    Guidance Regarding SRA Section III(a)(4)—Agent Compensation

**BACKGROUND**:

On September 13, 2010, the Risk Management Agency (RMA) issued Managers Bulletin
MGR-10-011, "Guidance Regarding SRA section III(a)(4)—Agent Compensation."  Since
the release of MGR-10-011, a number of issues have been raised by approved insurance
providers (AIPs).  After evaluating these issues, RMA has determined that modifications
in MGR-10-011 are needed.  The following bulletin incorporates necessary modifications,
with a revised "Action" section for MGR-10-011 provided in its entirety.  Any reference to
an AIP includes a Managing General Agent (MGA), if applicable.  Any reference to an
agent includes current and prospective agents.  For purposes of this bulletin, "agency"
means an entity that either currently has or prospectively could have a contract with an
AIP as an affiliate for the sales and service of eligible crop insurance contracts.

**ACTION**:

RMA has categorized items that do or do not constitute compensation as provided below:

1.    The following items (looking at the characteristics, not the name) constitute
compensation for the direct sale and service of eligible crop insurance contracts:

    (a)    Commissions.

    (b)    Salary.

    (c)    Profit Sharing.

    (d)    Bonuses.



The Risk Management Agency Administers
And Oversees All Programs Authorized Under
The Federal Crop Insurance Corportion

USDA is an Equal Opportunity Provider and Employer

**BULLETIN NO.: MGR-10-011.1**                                      **Page 2**

(e)    Consulting Fees.

(f)    Loans (unless meeting the criteria in paragraph 2).

(g)    Advance Payments.

(h)    Deferred Payments.

(i)    Cooperative advertising, to include any amount paid by an AIP to an agent, agency, affiliate, or third party for advertising or promotion of an agent or agency.

(j)    Amounts paid to agents, agencies, or affiliates for processing of eligible crop insurance contracts that either:

   (i)    Do not meet the definition of processing contained in paragraph 11; or

   (ii)   Meet the definition of processing, but exceed the limit established in paragraph 11.

(k)    Insurance coverage provided by AIPs to agents, agencies, or affiliates, including but not limited to errors and omission, accident, and life insurance.

(l)    An AIP's cost to benefit an agent, agency, or affiliate for office furnishings or equipment (excluding computer hardware), computer software (except as provided in paragraph 2), subscriptions, and meeting registration fees.

(m)    Unless the total cumulative cost benefitting an individual agent for a reinsurance year is less than $200, and the total for all agents and other employees of an agency is less than $600, an AIP's cost for:

   (i)    Sponsoring agent appreciation, recognition, reward, or similar trips;

   (ii)   Golf, hunting, fishing, or other outings held in conjunction with training events;

   (iii)  Trips or entertainment provided or in any way offered to individuals, including the unreimbursed portions thereof if an AIP or affiliate charges less than the full cost of the trips or

**BULLETIN NO.: MGR-10-011.1**                                    **Page 3**

entertainment (whether or not such costs would be considered ordinary or necessary for income tax purposes); or

(iv)  Any other entertainment, promotional gifts, or benefits, except as specified in paragraph 2.

(n)  Any other payments made by the AIP to an agent, agency, or any business owned in whole or in part by an agent, except as specified in paragraph 2.

2.  The following items do not constitute compensation for the direct sale and service of eligible crop insurance contracts:

(a)  Loans made on or before June 30, 2010.

(b)  Loans made on commercially reasonable terms as determined by FCIC (e.g., at a rate of interest, of a duration, and with repayment terms typical of commercial loans) and being repaid in accordance with such terms.

(c)  Payments related to any line of insurance not reinsured by FCIC under the Standard Reinsurance Agreement (SRA) (unless such payments are higher than industry standards for such lines of insurance).

(d)  Training, including continuing education expenses and incidental expenses directly associated with such training (e.g., meals, refreshments, and receptions), provided that the costs incurred are reasonable.

(e)  Promotional items of nominal value (e.g., pens, pencils, calendars, caps, and golf balls).

(f)  An AIP's actual costs (e.g., room rental and refreshments) paid to a third party (not an agent, relative of an agent, or agency) for educational producer meetings on the value of crop insurance as a risk management tool.

(g)  Computer software, including licensing fees, provided by an AIP to an agent, agency, or affiliate for providing eligible crop insurance contract premium quotes to producers or performing the processing tasks identified in paragraph 11, except that payments for such software paid to an agent, agency, or affiliate who sells or services eligible crop insurance contracts written by the AIP will be deemed to be compensation.

BULLETIN NO.: MGR-10-011.1                                    Page 4

(h)     Computer hardware including pre-loaded software provided by an AIP to an agent, agency, or affiliate, subject to the limitations on processing costs contained in paragraph 11.

(i)     Benefits that are required by law, as specified in paragraph 10.

(j)     Amounts paid to agents, agencies, or affiliates for the cost of processing that conform to the definition of processing and the limitations established in paragraph 11.

(k)     Reasonable, actual meal costs incurred by the AIP while meeting with agents and affiliates for purposes of agent recruiting, retention, and marketing.

3.     The phrase "direct sale and service of any eligible crop insurance contract" does not include loss adjustment costs.

4.     If an AIP employee is an agent and the activity as an agent represents a minority of the employee's responsibilities and time, only the portion of the employee's compensation related to performing agent functions will be considered to be for the direct sale and service of eligible crop insurance contracts.  If the AIP cannot support the apportionment of the compensation between the duties of the employee with documentation provided upon request to RMA, the employee's total compensation will be considered to be for the direct sale and service of eligible crop insurance contracts.

5.     Compensation subject to the limitation of section III(a)(4)(B) of the SRA (i.e., 80 percent of A&O and CAT LAE by State) may be paid anytime during or after the reinsurance year.  If the amount of A&O later is reduced under section III(a)(2) of the SRA and the reduction results in an AIP's existing payments exceeding the limitation contained in section III(a)(4)(B) of the SRA, the AIP will be granted 90 days in which to recover payments in the amount necessary to be in compliance with the limitations under SRA.

6.     Compensation subject to the limitation of section III(a)(4)(C) of the SRA (i.e., 100 percent of A&O and CAT LAE by State) may only be paid after the first annual settlement between the Federal Crop Insurance Corporation (FCIC) and the AIP for the reinsurance year.

7.     Except as provided in paragraph 8, if the amount of compensation is determined in reference to the premium and or losses of a particular reinsurance year, the compensation shall be included in calculating the limitations for that reinsurance year under sections III(a)(4)(B) and (C) of the SRA, regardless of the date on which  the agreement was made or the compensation paid.  For example, if the

amount of  compensation is based upon 2010 premium or 2010 loss ratio (e.g., profit sharing agreements or agreements to retain 2010 eligible crop insurance contracts with a particular AIP into the next reinsurance year), the compensation is deemed 2010 compensation even if it is not paid until the 2011 reinsurance year.  Conversely, if the amount of compensation is based upon 2011 premium or 2011 loss ratio, the compensation is deemed 2011 compensation even if the agreement under which the compensation is paid was made before July 1, 2010.

8.     For any arrangement between an AIP and an agent or agency entered into or amended after July 1, 2010, that provides compensation referencing 2010 or any previous reinsurance year, such compensation is deemed to be for the 2011 reinsurance year.

9.     In accordance with sections III(a)(4)(B) and (C)(ii) of the SRA, for purposes of determining compensation limitations, any "snap back" payments are excluded, and thus are not utilized to calculate the 80 percent and 100 percent limitations.

10.    The definition of "compensation" in the SRA uses the term "except for those benefits required by law," about which clarification has been sought.  For purposes of meeting SRA requirements, benefits required by law are the amounts paid by AIP's for the employer's share of Social Security; Medicare; unemployment insurance payments; and health insurance, if mandated in Federal, State, or local law, on behalf of any AIP employee who sells and services eligible crop insurance contracts.  An AIP may exclude its share of the payment of the benefits required by law when reporting compensation in the Plan of Operations, according to section III(f) of Appendix II of the SRA.

11.    Payments to agents, agencies, and affiliates for the cost of processing, including payments for computer hardware, up to and including 5 percent of the A&O subsidy and CAT LAE for a State for the reinsurance year will not be deemed by RMA to be compensation for the sale and service of eligible crop insurance contracts and will, therefore, be excluded from the limitations on compensation in section III(a)(4) of the SRA, provided the AIP can provide to RMA, upon request, detailed documentation supporting all such payments made to processing agents, agencies, and affiliates.

        (a)    "Processing" includes, but is not limited to, the performance of all of the following tasks:

               (i)    Beginning in the 2012 and continuing in subsequent reinsurance years, scanning, faxing, mailing, or otherwise providing original

**BULLETIN NO.: MGR-10-011.1**                                    **Page 6**

eligible crop insurance contract documents or legible copies of such documents to the AIP;

(ii)     The entry of electronic data at the eligible crop insurance contract level (including data necessary to comply with FCIC procedures); and

(iii)    The transmission of eligible crop insurance contract data to the AIP in a format that is compatible with the AIP's system for transmitting data to RMA.

(b)    For payments to an agent, agency, or affiliate to qualify as processing costs:

(i)     The agent, agency, or affiliate must perform the tasks described in paragraph 11(a) in a timely manner for substantially all eligible crop insurance contracts sold or serviced by the agent, agency, or affiliate;

(ii)    The terms and conditions of payments by the AIP to the agent, agency, or affiliate for processing must be clearly specified in writing; and

(iii)   In AIP documentation, payments to an agent, agency, or affiliate for processing must be shown separately from any amounts for the sales and service of eligible crop insurance contracts or other payments.

(c)    Computer hardware purchased by the AIP for an agent, agency, or affiliate is presumed to be used for processing and is subject to the limitations on processing costs established in this paragraph.

(d)    AIPs may report total processing costs paid in their Plan of Operations, according to SRA Appendix II, item III(f).

(e)    Payments to agents, agencies, and affiliates for processing in excess of 5 percent of the A&O subsidy and CAT LAE for a State for the reinsurance year will be deemed by RMA to be compensation and will be subject to the limitations in section III(a)(4) of the SRA.

**BULLETIN NO.: MGR-10-011.1**                                    **Page 7**

12.    In accordance with section III(a)(4)(E) of the SRA, if RMA determines that an AIP or its MGA has employed a scheme or device to avoid the limitations imposed by section III(a)(4) of the SRA, all payments by the AIP relating to the scheme or device will be deemed by RMA to be compensation subject to the limitations of section III(a)(4); any eligible crop insurance contracts relating to the scheme or device will be subject to the denial of reinsurance; and the AIP will be subject to other sanctions set forth in section IV(h) and 7 C.F.R. part 400, subpart R.  It is impossible to list all potential schemes and devices.  In view of questions that may remain after this bulletin is issued, RMA will schedule periodic meetings to discuss and evaluate activities that might be subject to section III(a)(4)(E).  Nevertheless, RMA has been made aware of several hypothetical situations that would constitute a scheme or device under section III(a)(4)(E).  RMA offers these examples for general information; the list is not intended to be comprehensive:

(a)    Offering commission rates to an agent for private crop-hail business that exceed usual and customary rates contingent on an AIP receiving that agent's book of eligible crop insurance contracts reinsured under the SRA.

(b)    The purchase by an AIP of an insurance agency under terms and conditions that would, in effect, manipulate and inflate the compensation the agency owner or the agency's agents receive beyond that which it would receive under the SRA had the agency not changed ownership. Terms of such a scheme might include, for instance, an AIP purchasing an agency for an amount in excess of market value and later allowing the seller of the agency to reacquire the business for a relatively low value, thereby circumventing the limitation on agent compensation.

(c)    The purchase of an agent's book of business with terms that allows annual payments to be based on the premium volume or the performance of the book of business for which the payment is being made.

(d)    The purchase of a book of business owned by a person other than an agent, who in turn, provides all or part of the funds received to the agents employed or contracted by the person.

(e)    To acquire an agent's book of business, an AIP hires, at an inflated wage, the agent or relative of the agent for a position that does not involve the direct sale or service of eligible crop insurance contracts.

(f)    Establishing or using a third party (such as a commodity group, a marketing specialist, or data processing entity) to channel payments to agents or agencies to supplement compensation that is subject to the SRA limitations.

**BULLETIN NO.: MGR-10-011.1**                                            **Page 8**

      (g)     Establishing or using a third party (such as a commodity group, a marketing specialist, or data processing entity) to provide services to producers that are normally performed by an agent or agency.

      (h)     Back-dating or forward-dating documents related to agent or third-party compensation arrangements to shift compensation from one reinsurance year to another.

13. Because section III(a)(4) is new and raises many complex issues, RMA will be mindful of the materiality and related factors in 7 C.F.R. § 400.454(c)(2) as it and AIPs become familiar with RMA's position. Nevertheless, use of an intentional scheme or device to avoid compliance will be deemed a serious violation of the SRA.

14. RMA recognizes that the foregoing does not exhaust the subject of determining what is or is not compensation. By reference to the guidance provided above, and in working with financial and tax accountants and advisors, AIPs should be able to develop internal operating principles for reasonably administering the SRA limitations on agent compensation. RMA reminds AIPs that they must keep in mind both the specific text of section III(a)(4) of the SRA, the guidance provided in this bulletin, and RMA's purpose in limiting agent compensation (in particular, preserving the solvency of AIPs).

15. Nothing contained in this bulletin shall preclude an AIP from seeking guidance from RMA as to whether or not contractual relationships with agents prior to July 1, 2010 do or do not constitute compensation within the meaning of the SRA for 2011 and subsequent reinsurance years.

**DISPOSAL DATE:**

Until rescinded by RMA.