**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRISK INSURANCE SERVICES LLC,<br><br>                        Plaintiff,<br><br>    v.<br><br>FEDERAL CROP INSURANCE<br>CORPORATION *et al.*,<br><br>                        Defendants. | Civil Action No.: 1:26-cv-00842 |

**PLAINTIFF'S OPPOSITION TO MOTION FOR STAY OR IN THE ALTERNATIVE
AN EXTENSION OF TIME TO FILE AN ADMINSTRATIVE RECORD**

In accordance with *American Bioscience, Inc. v. Thompson*, 243 F.3d 579 (D.C. Cir. 2001), and plaintiff Brisk Insurance Services LLC's then-pending Emergency Motion for Stay (Dkt. 3), on March 26, 2026, the Court ordered defendants ("RMA") to file the administrative record for Manager's Bulletin MGR-26-002 by April 8 to enable the Court to assess Brisk's "'probability of success on the merits'" (Minute Order dated March 23; Minute Entry for Motion Hearing dated March 26). On March 31, the Court denied the Emergency Motion for Stay. (Dkt. 15, 16). Although the original reason for the filing of the administrative record has thus been mooted, there does not exist good cause to postpone the filing of it because (i) Brisk plans to soon seek summary judgment as to MGR-26-002; (ii) the documents contained in the administrative record for MGR-26-002 will almost certainly be part of the administrative record for any new bulletin, rendering the former still relevant; (iii) requiring the production of both administrative records preserves the integrity of the process and allows Brisk to independently verify the same; and (iv) RMA may ultimately not issue a new bulletin, or issue a new bulletin with no substantive changes, and thus not generate a "new" or different administrative record.

**I.    The administrative record for MGR-26-002 is relevant to Brisk's forthcoming summary judgment motion seeking to set aside MGR-26-002 as arbitrary and capricious on the basis that it violates the change-in-position doctrine.**

Brisk cannot meaningfully move for summary judgment as to MGR-26-002 without the underlying administrative record. When denying the Emergency Motion for Stay, the Court stated, "Given the rapid ongoing developments, the Court intends to move expeditiously to resolve the merits of this dispute," and ordered the parties to "propose next steps … including an expedited summary judgment briefing schedule if necessary." (Dkt. 15, at 17). In accordance therewith, Brisk will file a summary judgment motion by April 24 seeking to set aside MGR-26-002 on the basis that it fails to comply with the change-in-position doctrine. Brisk needs the administrative record for MGR-26-002 for the Court to be able to render a decision.

Although the Court arguably may not need to consider the administrative record when determining compliance with that doctrine—because that can be assessed by looking at MGR-26-002 alone (*see* 3.26.26 Tr., 79:19-21 ("And I've looked through this bulletin over and over again. The agency makes absolutely no attempt to explain why it is making the change."))—the Court will need the administrative record to determine the appropriate remedy to award if it finds that RMA did not comply with the doctrine. When a rule is held arbitrary and capricious, "the 'ordinary practice is to vacate it.'" *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 673-74 (D.C. Cir. 2019). "But in 'rare cases,' [the D.C. Court of Appeals] will opt instead to remand without vacating the rule, so that the agency can 'correct its errors.'" *Id.* at 674. In analyzing the latter equitable remedy, the D.C. Court of Appeals considers, *inter alia*, "the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand." *Id.* The administrative record for MGR-26-002 will aid the Court in assessing whether RMA "will be able to justify [MGR-26-002] on remand."

Brisk prefers to avoid burdening the Court with multiple summary judgment motions (one on MGR-26-002, and potentially another on any new bulletin) but the circumstances necessitate two potential motions. Brisk's proposal to RMA was that (i) RMA agree to issue any new bulletin and the associated administrative record by May 19, which is 50 days after RMA first projected it needed 30-60 days for the new bulletin (Dkt. 14)); and (ii) the parties complete any summary judgment briefing on that new bulletin by June 15 so the Court, if its schedule so allows, can be in a position to issue a ruling by June 30 before reinsurance year 2027 starts on July 1. (Ex. A, at 7-8). RMA ultimately responded that it "will not agree to a firm date to publish the new … bulletin." (*Id.* at 3). RMA's motion states that RMA "expects to publish" the new bulletin by June 2 and to file the associated administrative record within ten days thereafter by June 12. (Dkt. 18, at 1). That expectation to publish, which Brisk has no reason to question is made in good faith, could easily be pushed out and beyond July 1 if unexpected circumstances divert RMA's attention elsewhere. Brisk understands and appreciates why RMA is reluctant to commit to a firm date for the new bulletin, and RMA should take the time it needs to properly analyze and consider the new bulletin, even if it extends beyond July 1, without being rushed by Brisk or this litigation.[1] But, at the same time, Brisk's view is that MGR-26-002—which Brisk contends violated the change-in-position

---

[1] RMA's uncertainty about committing to a deadline is underscored by the fact that, on April 2, RMA's counsel circulated a draft joint status report stating RMA "will publish" a new bulletin within 60 days (Ex. B), but the next day, counsel circulated a revised draft stating RMA merely "expects to publish" within 60 days (Ex. C), and made a court filing that same day stating the same. (Dkt 18, at 1).

doctrine, with the Court initially expressing similar concerns[2]—should not remain in effect in the interim because AIPs remain bound by it and are acting on it.[3]

Were MGR-26-002 allowed to remain in effect while RMA works on any new bulletin, it could promote the type of "agency indifference" that several D.C. Circuit Court judges have cautioned against in similar contexts. *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring) (urging courts "to consider the alternatives to the open-ended remand without vacatur" because it "sometimes invites agency indifference"); *see Nat. Res. Def. Council v. Env't Prot. Agency*, 489 F.3d 1250, 1262-64 (D.C. Cir. 2007) (Randolph, J., concurring) ("A remand-only disposition is, in effect, an indefinite stay of the effectiveness of the court's decision and agencies naturally treat it as such."). To avoid the need for a summary judgment motion, Brisk asked RMA if it would agree to withdraw or stay MGR-26-002 until the issuance of any new bulletin, but RMA declined that request. (Ex. A, at 3).

---

[2] *See* Dkt. 15 ("At first glance, MGR-26-002 seems to run headfirst into [the change-in-position] doctrine. The bulletin does not appear to display an awareness of a change in position or offer reasons for the new policy."); 3.26.26 Tr., 75:21-76:4 ("And when I look at this bulletin, the agency said almost nothing about the prior bulletin in the most recent one. It didn't acknowledge it at all. Didn't acknowledge that it was changing its position and it didn't make any attempt to explain its reasons for changing its position in the bulletin. So, I mean, why isn't this just a straightforward violation of the APA and the agency just not doing its work?"); *id.*, 79:5-6 ("I mean, this seems like a clear violation of the APA to me."); *id.*, 79:19-24 ("And I've looked through this bulletin over and over again. The agency makes absolutely no attempt to explain why it is making the change. That's just not permitted under the APA. You can't take shortcuts like that. The agency has to do the work to explain that, to the public, to regulated entities; that's just the law.").

[3] As RMA's records will show, three of the AIPs with which Brisk contracts (Great American Insurance Company, Rural Community Insurance Company, and QBE Americas, Inc.) did not include Brisk in their respective plans of operations submitted to RMA on April 1.

**II.    The estimated 250-300 documents comprising the administrative record for MGR-26-002 will likely all be contained in the administrative record for any new bulletin, and so, to enable Brisk to expeditiously move forward with any summary judgment motion as to the new bulletin, RMA should make those 250-300 documents available now.**

Because the subject matter of any new bulletin will necessarily relate to MGR-26-002, the administrative record for the new bulletin should necessarily contain the full administrative record for MGR-26-002. On April 3, Brisk's counsel sent an email to RMA's counsel asking, "At this time, does RMA have any reason to believe that any of the documents contained in the administrative record for MGR-26-002 will not be included in the administrative record for the new bulletin?" (Ex. A, at 6). RMA's counsel responded to the email but did not answer that question. (*Id.* at 4-5). RMA has informed the Court that the administrative record for MGR-26-002 contains about 250-300 documents comprising about 1,000 to 1,500 pages. (Dkt. 10, at 1). If Brisk can review and digest those up to 300 documents now—as opposed to waiting until when RMA seeks to first make those up to 300 documents available on June 12, just 19 days before the new reinsurance year starts—Brisk can far more quickly prepare any summary judgment motion relating to the new bulletin, enabling the Court to conceivably issue a ruling by June 30.

**III.    Requiring RMA to file the administrative records for both MGR-26-002 and any new bulletin ensures the integrity of the presumption of administrative regularity.**

"The administrative record includes all materials 'compiled' by the agency, that were 'before the agency at the time the decision was made.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (quotations omitted); *Univ. of Col. Health v. Azar*, 486 F.Supp.3d 185, 199 (D.D.C. 2020) (quotation omitted) ("[T]he administrative record … must include all of the information that the agency considered 'either directly or indirectly.'"). "The agency may not skew the record in its favor by excluding pertinent but unfavorable information." *Fund for Animals v. Williams*, 391 F.Supp.2d 191, 197 (D.D.C. 2005). An agency's designation

of the administrative record is "'entitled to a presumption of administrative regularity.'" *Oceana,*

*Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (quotation omitted).

An unintended predicament could arise where an agency creates an administrative record

for an original rule and a separate administrative record for a revised rule, but produces only the

latter record. If an agency considers an unfavorable document for the original rule, that document

is part of the administrative record for that rule. But if, when amending the rule, the agency, already

aware of that unfavorable document, explicitly decides to *not* consider it when evaluating the

amendment, it technically would not be part of the second administrative record, such that the

party challenging the agency action would never become aware of it. Therefore, to preserve the

integrity of the "presumption of administrative regularity," Brisk respectfully submits that it is best

practice to require agencies to file the administrative records for both an original rule and any

revised rule. And, in that way, Brisk will be in a position to independently verify the accuracy and

completeness of the administrative record.

IV.    **Although RMA has advised that it currently "expects" to issue a new bulletin, over the next 60 days, it might decide to not do so, or to issue a new bulletin with no substantive changes that simply addresses the change-in-position doctrine.**

The apparent sole impetus for RMA agreeing to consider revising MGR-26-002 was the

Court urging RMA at the March 26th hearing to "fix" the "change-in-position doctrine" problem.

(*See* 3.26.26 Tr., 77:3-79:24). At the hearing, RMA would not concede that MGR-26-002

constituted a change from prior policy. (*See id.*, 76:17-78:17). In its subsequent March 27th and

March 30th filings with the Court, RMA said it was "evaluating" whether to issue a new bulletin

to "supplement" MGR-26-002, and that it would make its decision by April 8. (Dkt. 13, 14).

But on April 2, six days before RMA planned to make a decision, RMA told Brisk, via a

draft joint status report, that it "will publish" a new bulletin to "replace" MGR-26-002. (Ex. B).

6

Notably, RMA conveyed this decision at the same time—and in the same sentence—it first conveyed that it wished to delay the filing of the administrative record for MGR-26-002: "[RMA] will publish a new manager's bulletin within 60 days and requests that the current deadline of April 8, 2026, to file an administrative record for MGR-26-002 be stayed because a new manager's bulletin will likely not have an identical administrative record." (*Id.*).

Brisk is concerned that RMA's seemingly premature, abrupt pronouncement to definitively "replace" MGR-26-002—when, as far as Brisk knew, RMA was only considering supplementing MGR-26-002 to fix the "change-in-position" issue—could be tied to a sudden desire by RMA to avoid filing the administrative record for MGR-26-002. To try to address this concern, and as part of a meet-and-confer effort, Brisk's counsel posed these questions to RMA's counsel:

> ◦ At this time, is RMA able to identify any documents or categories of documents that it anticipates could conceivably be included in the administrative record for the new bulletin that are not included in the administrative record for MGR-26-002 (with the exception of possibly the letter Brisk will soon send to RMA)?

> ◦ At this time, does RMA know whether it will, on the one hand, maintain the same three exceptions set forth in MGR-26-002 but simply seek to provide the information required under the change-in-position doctrine, or, on the other hand, also remove one or more of the three exceptions and/or add one or more exceptions?

> . . .

> ◦ In a March 27th filing and then again in a March 30th filing, RMA represented to the Court that any new bulletin would "supplement" MGR-26-002. But in the draft status report you circulated yesterday, RMA now states that the new bulletin will "replace" MGR-26-002. Particularly given that RMA (understandably) does not yet know what the new bulletin will contain, what is the factual basis for RMA changing its position that the new bulletin will "replace" instead of "supplement" MGR-26-002?

(Ex. A, at 5-6). RMA's counsel, declining to answer those questions, said only, "I don't know the substance of the new manager's bulletin." (*Id.* at 3). It is completely understandable that RMA does not yet know what any new bulletin will contain or address, but at the same time, it

underscores the possibility that there might be no new bulletin, or the new bulletin might have no substantive changes warranting a new administrative record. For example, if RMA issues a supplemental bulletin that maintains the same three exceptions as MGR-26-002 but merely identifies an alleged good reason for the policy change—which good reason would need to be based on the administrative record for MGR-26-002 as it existed at the time—there would be no reason for a new administrative record. *See IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made.")

\* \* \*

For the above reasons, Brisk respectfully requests that the Court deny the motion for stay.[4]

Respectfully submitted,

/s/ Charles A. Zdebski
Charles A. Zdebski (#451075)
Chad E. Kurtz (#1016934)
COZEN O'CONNOR
2001 M Street NW, Suite 500
Washington, DC 20036
Tel: (202) 280-6528
czdebski@cozen.com
ckurtz@cozen.com

*Attorneys for Plaintiff,*
*Brisk Insurance Services LLC*

Dated: April 6, 2026

---

[4] To the extent RMA suggests that a reason for delaying the filing of the administrative record is due in part to Brisk asking RMA for a meeting, Brisk notes that RMA expressed an intent to seek the stay before Brisk made its outreach.