**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BRISK INSURANCE SERVICES LLC,

               Plaintiff,

    v.

FEDERAL CROP INSURANCE
CORPORATION *et al.*,

               Defendants.

Civil Action No.: 1:26-cv-00842 (SLS)

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT/OPPOSITION TO CROSS-MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Charles A. Zdebski (#451075)
Chad E. Kurtz (#1016934)
COZEN O'CONNOR
2001 M Street NW, Suite 500
Washington, DC 20036
Tel: (202) 280-6528
czdebski@cozen.com
ckurtz@cozen.com

*Attorneys for Plaintiff,
Brisk Insurance Services LLC*

Dated: June 12, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

I.    ARGUMENT.......................................................................................................... 1

      A.    Brisk has standing to challenge MGR-26-002.1....................................... 1

      B.    MGR-26-002.1 is final agency action....................................................... 3

      C.    The Court should set aside MGR-26-002.1 as unlawful under § 706(2)............... 5

            1.    The Court should set aside MGR-26-002.1 under § 706(2)(C)
                  because ████████████████████████████████
                  ████████████............................................................................. 5

            2.    The Court should set aside MGR-26-002.1 under § 706(2)(D)
                  because RMA failed to undertake notice-and-comment
                  rulemaking. ......................................................................................... 8

                  a.    MGR-26-002.1 is not an interpretive rule...................................... 8

                  b.    The "contract" exception to notice-and-comment
                        rulemaking under § 553(a)(2) is not applicable here. ................... 11

            3.    The Court should set aside MGR-26-002.1 under § 706(2)(A)
                  because it is arbitrary and capricious. ....................................................... 12

                  a.    MGR-26-002.1 is arbitrary and capricious because it fails
                        to comply with the change-in-position doctrine. ......................... 12

                        1.    RMA continues to argue ███████████████. ......... 12

                        2.    RMA implicitly concedes that ██████████████
                              ████████████████████████. ..................... 14

                  b.    MGR-26-002.1 is arbitrary and capricious because it is
                        neither reasonable nor reasonably explained. .............................. 17

                        1.    The three conditions are neither reasonable nor
                              reasonably explained........................................................ 17

                              a.    The "financing" condition is neither reasonable nor
                                    reasonably explained............................................ 17

                              b.    The "influencing" condition is neither reasonable
                                    nor reasonably explained. ..................................... 19

                              c.    The "exclusivity" condition is neither reasonable
                                    nor reasonably explained. ..................................... 20

                        2.    The "Schemes or Devices" guidance is neither
                              reasonable nor reasonably explained. ............................... 22

                        3.    It is not reasonable for MGR-26-002.1 to distinguish
                              between third-party software and in-house software. ....... 22

II.   CONCLUSION ...................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
    370 F.Supp.3d 1 (D.D.C. 2019) ....................................................................................13

*Amgen, Inc. v. Smith*,
    357 F.3d 103 (D.C. Cir. 2004) ....................................................................................2, 3

*Animal Legal Def. Fund, Inc. v. Glickman*,
    154 F.3d 426 (D.C. Cir. 1998) ........................................................................................2

*Ascendium Educ. Sols., Inc. v. Cardona*,
    78 F.4th 470 (D.C. Cir. 2023) ........................................................................................5

*Bellion Spirits, LLC v. United States*,
    7 F.4th 1201 (D.C. Cir. 2021) ........................................................................................4

*Block v. Meese*,
    793 F.2d 1303 (D.C. Cir. 1986) ......................................................................................2

*CSL Plasma Inc. v. U.S. Customs & Border Prot.*,
    33 F.4th 584 (D.C. Cir. 2022) ........................................................................................2

*Food & Drug Admin. v. Wages & White Lion Inv., LLC*,
    604 U.S. 542 (2025) ......................................................................................................14

*Guardian Federal Savings & Loan Association v. Federal Savings & Loan
    Insurance Corporation*,
    589 F.2d 658 (D.C. Cir. 1978) ......................................................................................11

*Hawkins v. Haaland*,
    991 F.3d 216 (D.C. Cir. 2021) ........................................................................................1

*IGas Holdings, Inc. v. Envt'l Prot. Agency*,
    146 F.4th 1126 (D.C. Cir. 2025) ..................................................................................18

*Judulang v. Holder*,
    565 U.S. 42 (2011) ........................................................................................................18

*Mexichem Fluor, Inc. v. Env't Prot. Agency*,
    866 F.3d 451 (D.C. Cir. 2017) ........................................................................................5

*Michigan v. Env't Prot. Agency*,
    268 F.3d 1075 (D.C. Cir. 2001) ......................................................................................5

*Nat. Res. Def. Council v. E.P.A.*,
   643 F.3d 311 (D.C. Cir. 2011) ........................................................................................3

*Nat. Res. Def. Council v. Env't Prot. Agency*,
   777 F.3d 456 (D.C. Cir. 2014) ........................................................................................5

*Nat'l Ass'n for Advancement of Colored People v. Trump*,
   298 F.Supp.3d 209 (D.D.C. 2018) ................................................................................15

*Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Human Servs.*,
   No. 25-2453, 2025 WL 2840318 (D.D.C. Oct. 7, 2025) ..............................................4

*Sierra Club v. Jewell*,
   764 F.3d 1 (D.C. Cir. 2014) ............................................................................................1

*Villarreal-Dancy v. U.S. Dep't of Air Force*,
   633 F.Supp.3d 19 (D.D.C. 2022) ..................................................................................15

*WildEarth Guardians v. Zinke*,
   368 F.Supp.3d 41 (D.D.C. 2019) ....................................................................................2

**Statutes**

5 U.S.C. § 553(a)(2) .............................................................................................................11

5 U.S.C. § 706(2) ...................................................................................................................5

5 U.S.C. § 706(2)(C) ..............................................................................................................5

7 U.S.C. § 1502 ....................................................................................................................11

7 U.S.C. § 1506(l) .................................................................................................................11

7 U.S.C. § 1508(k)(2) ................................................................................................5, 6, 7, 11

**Other Authorities**

U.S. Const. Art. III ................................................................................................................3

Brisk submits this reply brief in support of summary judgment motion/opposition to cross-motion to dismiss, or in the alternative, for summary judgment.

## I.   ARGUMENT

### A.   Brisk has standing to challenge MGR-26-002.1.

For standing, a plaintiff must show an (i) injury in fact (ii) "fairly traceable" to the subject agency action and (iii) redressable by a favorable decision. *Sierra Club v. Jewell*, 764 F.3d 1, 5 (D.C. Cir. 2014). RMA challenges only the "fairly traceable" prong, arguing that ███████████ ████████████████████████████████████████████████████████████ ████████████." (Dkt. 42-1, at 18).

For traceability where third parties are involved, Brisk need only show that the "predictable effect" of MGR-26-002.1 was ██████████████████████████████. *See Hawkins v. Haaland*, 991 F.3d 216, 225 (D.C. Cir. 2021). In the leadup to the new bulletin, one RMA representative questioned, "████████████████████████████████████ ████████████ (GOV000075). In its ███████████████████████████ ███████████████████████████████████████████████████ ████████]" (GOV001772; GOV001782). Not only did RMA predict that MGR-26-002.1 ██████ ███████████████████████████████████████████████████ (*See* GOV000088 (███████████████████████████████████████████████████ That the "predictable effect" came to fruition is confirmed by the fact ████████████████ ████████████████████████████████████████████ ████████ ███████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████

1



(Ex. A);[1] *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (need only "*de facto* causality").

That MGR-26-002.1 does not "█████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████ (Dkt. 42-1, at 18) is not the correct analysis. *Cf. Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 442 (D.C. Cir. 1998) ("Both the Supreme Court and this circuit have repeatedly found causation where a challenged government action *permitted* the third party conduct that allegedly caused a plaintiff injury, when that conduct would have otherwise been illegal. Neither court has ever stated that the challenged law must *compel* the third party to act in the allegedly injurious way.").

RMA's "zone of interests" arguments are unavailing. RMA argues that ███████████ ████████████████████████████████████████████████████████ ███████████ (Dkt. 42-1, at 20), but "[p]arties motivated by purely commercial interests routinely satisfy the zone of interests test under this court's precedents." *Amgen, Inc. v. Smith*, 357 F.3d 103, 109 (D.C. Cir. 2004). RMA argues that ████████████████████████ ███████████ (Dkt. 42-1, at 20), but "[t]he zone of interests test does not require that the statute directly regulate the plaintiff, nor does it require specific congressional intent to benefit the plaintiff." *CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 33 F.4th 584, 589 (D.C. Cir. 2022).

---

[1] To the extent an administrative record lacks sufficient evidence of standing, courts may consider extra-record evidence. *WildEarth Guardians v. Zinke*, 368 F.Supp.3d 41, 61 (D.D.C. 2019).

Although RMA argues ███████████████████████████████████████████████████████

██████████████████████████ " (Dkt. 42-1, at 20)███████████████████████. (*See* GOV000498

("service providers shall demonstrate … substantial conformity with the requirements of [the

SRA], the regulations and FCIC procedures"); GOV000524 ("affiliates shall comply with" the

SRA and FCIC procedures); GOV000524 (allowing FCIC to impose record-keeping requirements

on affiliates); GOV000516 (service providers and affiliates must sometimes sign a non-disclosure

statement); GOV000527 (affiliates may be subject to sanctions)). ██████████████████████

█████████████████████████████████████████████████████████████████████████████

████████████████████ *See Amgen*, 357 F.3d at 109 ("Congruence of interests, rather than identity of

interests, is the benchmark; the zone of interests test serves to exclude only those 'parties whose

interests are not consistent with the purposes of the statute in question[.]'") (quotation omitted).[2]

## B.    MGR-26-002.1 is final agency action.

Finality turns on whether a rule "announces a binding change in the law." *Nat. Res. Def.*

*Council v. E.P.A.*, 643 F.3d 311, 319 (D.C. Cir. 2011). Under the SRA, AIPs must comply with

"FCIC procedures," which include "bulletins." (GOV000490; GOV000498; GOV000524). In its

opposition brief, RMA acknowledges that "████████████████████████████████████████

█████████████████████████████████████████████████ (Dkt. 42-1, at 6, 15, 21).

RMA nonetheless argues ███████████████████████████████████████████████

████████████ (*Id.* at 21). █████████████████████████████████████████████████████

████████████████████. (*See* GOV000488 (SRA stating that, if the SRA and "FCIC procedures"

conflict, the SRA controls)). Also, the bulletin's boilerplate disclaimer that it does not "constitute[]

---

[2] Contrary to RMA's assertion, ██████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████████████████████. Because Brisk has Article III standing and satisfies the zone-of-
interests test, it may proceed with its APA claim.

approval or disapproval by RMA of any particular payment or benefit, or a prohibition of any business practice or transaction by any AIP" does not override the SRA deeming the bulletin binding. (GOV001788); *cf. Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Human Servs.*, Slip Copy, No. 25-2453, 2025 WL 2840318, at *21 (D.D.C. Oct. 7, 2025) ("Even where there is boilerplate language disclaiming the guidance's compulsory nature, agency guidance may still be considered binding if the whole of the document still appears to give commands.").

Agency action is final if it (i) "mark[s] the consummation of the agency's decisionmaking process"; and (ii) is one "by which rights and obligations have been determined, or from which legal consequences will flow." *Bellion Spirits, LLC v. United States*, 7 F.4th 1201, 1208 (D.C. Cir. 2021). RMA does not dispute that ███████████████████████████████████ ████████████████ Because RMA does not dispute t████████████████████████████ ████████████████████████████████, RMA does not dispute █████████████████████.

RMA's argument that MGR-26-002.1 ████████████████████████████████████████. (Dkt. 42-1, at 21). The bulletin obligates AIPs to report third-party software payments as compensation in certain scenarios: It states that "AIPs should evaluate whether software arrangements create indirect benefit pathways and report associated payments accordingly," and also that RMA may consider software payments a scheme or device "unless counted [by AIPs] as agent compensation." (GOV001785-88). An internal RMA email ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ (GOV000084). ████████████████  ████████████████████████████████████ ████████████████████████████████████████████████████████2,

4

███████████████████████████ (Ex. B).[3] █████████████████

████████████████████████████████████████████████

███████████████████████████████ (Ex. C).

MGR-26-002.1 does not simply "r████████████████████████

██████████" (Dkt. 42-1, at 22). It requires AIPs, for the first time, to report third-party software

payments as compensation when any of the three conditions are present. (*See* GOV001780 (██

███████████████████████████████████████████)).

C.    **The Court should set aside MGR-26-002.1 as unlawful under § 706(2).**

    1.    **The Court should set aside MGR-26-002.1 under § 706(2)(C) because 7 U.S.C. § 1508(k)(2) did not authorize RMA to issue MGR-26-002.1.**

"[An] agency must have statutory authority for the regulations it wants to issue." *Mexichem*

*Fluor, Inc. v. Env't Prot. Agency*, 866 F.3d 451, 460 (D.C. Cir. 2017); *see Michigan v. Env't Prot.*

*Agency*, 268 F.3d 1075, 1082 (D.C. Cir. 2001) ("Agency authority may not be lightly presumed.").

"To determine whether [an agency] acted within the bounds of its statutory authority, [courts]

begin with the traditional tools of statutory interpretation: text, context, structure, and purpose."

*Ascendium Educ. Sols., Inc. v. Cardona*, 78 F.4th 470, 479 (D.C. Cir. 2023). An agency "must

'ground its reasons for action or inaction in the statute,' rather than on 'reasoning divorced from

the statutory text.'" *Nat. Res. Def. Council v. Env't Prot. Agency*, 777 F.3d 456, 468 (D.C. Cir.

2014) (internal quotations omitted) (quotation omitted).

RMA relies on ██████████████████████. (Dkt. 42-1, at 22-23).

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[3] Although the administrative record includes the SRA, it omits the appendices thereto. RMA's opposition brief ██████████████ (Dkt. 42-1, at 5, 28)████████████████████ ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ (*Id.* at 22-23). █████████████████

████████████████████████████████████████████████████

For context, FCIC provides four types of funding to AIPs: (i) reinsurance; (ii) subsidies for administrative and operating expenses ("A&O"); (iii) risk subsidies (to reimburse farmer premiums); and (iv) CAT loss adjustment expenses ("CAT LAE"). (GOV000487; GOV000489; GOV000494; GOV000496); § 1508(b)(10), (c)(8), (k)(1), (k)(4). The objective of reinsurance is to transfer risk from insurers (AIPs) to reinsurers (FCIC):

> Reinsurance is sometimes referred to as insurance for insurance companies. It is a method of dividing the risk among several insurance companies through cooperative arrangements that specify ways in which the companies will share risks. Reinsurance serves to limit liability on specific risks, increase the volume of insurance policies that may be written, and help companies stabilize their business in the face of wide market swings in the insurance industry.

(GOV000547). Section II of the SRA is "Reinsurance" and Section III is "Subsidies, Expenses, Fees, and Payments." (GOV000486). The cap on agent compensation appears in Section III. (GOV000512). Under Section III(a)(4)(B), there is a per-state cap on agent compensation at 80% of "the total amount of A&O subsidy and CAT LAE," and Section III(a)(4)(E) prohibits "[a]ny scheme or device to circumvent [the cap]." (GOV000512-13). By imposing the cap, RMA has dictated *how* AIPs may spend their A&O subsidies and CAT LAE.

MGR-26-002.1 addresses the cap and schemes or devices, not reinsurance. RMA does not explain ██████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████. Simply regurgitating ████████████████████████ RMA states that ████████████████████████████████████████████████████████████████████" (Dkt. 42-1, at 30, 34), █████████████████████████████████████████████████████████████

████████████. Nor does RMA explain ████████████████████████████████████████████████

███████ Because MGR-26-002.1 does not contain or relate to any reinsurance-related term or condition, § 1508(k)(2) did not provide RMA with authority to adopt it.

The § 1508 subsections addressing the A&O subsidies do not authorize MGR-26-002.1. Subsection (k)(4)(A), which identifies the FCIC Board's right to "establish[]" a "rate … to reimburse [AIPs] and agents for the [A&O] of the [AIPs] and agents," does not authorize the FCIC to control how AIPs may spend the A&O subsidies. Subsection (k)(8)(E)(i), which addresses the SRA renegotiation for the 2011 reinsurance year when the compensation cap was established, states that FCIC "shall consider alternative methods to determine reimbursement rates for [A&O]." It does not state that FCIC shall or may regulate how AIPs elect to spend the A&O subsidies.

RMA does not dispute ███████████████████████████████████████████████

████████████████████████████████████████████████████. ████████

███████████████████████████████████████ (Dkt. 42-1, at 23). ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. As RMA knows, ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████.[4] (GOV001794; GOV001801; *see* GOV001791 ("████████████████

████████████████████████████████")). Indeed, after MGR-26-002 was issued,

████████████████████████████████████ (Dkt. 42-1, at 18).

To try to justify the "financing" condition, RMA states, "████████████████

████████████████████████████████████

████████████████████████████████ (Dkt. 42-1, at 35).

But RMA's █████████████████████████████████████:

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

██████████████████████

(GOV000003 (emphasis added)). Unable to regulate that conduct, RMA has now tried to do so

indirectly by unnaturally forcing the issue into the "agent compensation" context.

    **2.**    **The Court should set aside MGR-26-002.1 under § 706(2)(D) because RMA failed to undertake notice-and-comment rulemaking.**

    **a.**    **MGR-26-002.1 is not an interpretive rule.**

RMA argues ██████████████████████████

████████████████████████████████████

███████████████████ (Dkt. 42-1, at 24). ██████████████

████████████████████████████████████

████████████████████████

As for the bulletin allegedly interpreting "compensation," RMA's brief reads as if ████████

████████████████████████████████████

---

[4] Under the SRA, AIPs may spend up to 100% of their A&O subsidies on agent compensation if they have sufficient profits. (GOV000512-13). ████████████████████████████

██████████████████

8

██████████████████████████████████████████████████████████

███████████████████████████████" (*Id.* at 24-25). RMA misses the point. It is undisputed that quoting and processing software is a "benefit of value" under the definition of "compensation." But in adopting ¶ 2(g), RMA made the policy decision that, although that software is a benefit of value, it will not constitute compensation. The bulletin simply identifies three new conditions where the ¶ 2(g) exemption does not apply, which in no way involves interpreting "compensation."

Nor is ¶ 2(g) of MGR-10-011.1, which MGR-26-002.1 amends, an interpretive rule. Paragraph 1 of MGR-10-011.1—identifying items constituting compensation—interprets "compensation" by listing items meeting its definition. (GOV000604-06). Paragraph 2, though, does not interpret "compensation." It identifies items that, despite meeting the definition of "compensation," RMA has, for various policy reasons, declared to not constitute compensation. (GOV000606-07). Paragraph 2(g), stating that quoting and processing software is not compensation (because it is a necessary, administrative tool), is thus a legislative rule.

The *American Mining* factors show MGR-26-002.1 is a legislative rule.[5] Absent the bulletin, there is no "adequate legislative basis for enforcement action." RMA argues ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████ (Dkt. 42-1, at 26). Again, because of ¶ 2(g), the "compensation" definition is irrelevant here. Section 1(l) states software is compensation "except as provided in [¶ 2(g)]" (GOV000605), rendering it likewise irrelevant here.

---

[5] RMA argues ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████ .

To the extent RMA suggests ███████████████████████████████ ████████████████████████████████████████████ IS-11-06 ("Agent Compensation – Schemes and Devices") defines a "scheme or device" to exclude items listed as non-compensation in Paragraph 2 of MGR-10-011.1, such as quoting and processing software:

> For the purposes of this memorandum, the term "payment or benefit" includes anything of value provided to the agent such as money, trips, dinners, insurance, or any other thing of value or benefit *not otherwise excluded from compensation in [MGR-10-011.1]*. …

> In determining whether a particular action is a scheme or device, RMA has taken into consideration whether the action would provide the means for the AIP to provide a payment or benefit in addition to the commission, salary, bonuses, and other payments or benefits customarily included in the agent contracts, *and not otherwise excluded from compensation in [MGR-10-011.1]*.

(GOV000598 (emphases added)). RMA does not dispute that ████████████████  ████████████████████████████████████████████ ████████████████ (Dkt. 42-1, at 31, 44 ████████████████████████ ████████████████████████████████████████████ ). Putting aside speculative assumptions about how IS-11-06 was or should have been interpreted, it speaks for itself.

RMA ignores that a "scheme or device" requires a subjective intent to bypass reporting compensation. (*See* GOV000513 ("scheme or device to circumvent the [cap]"); GOV000610 ("employed a scheme or device to avoid the [cap]"); GOV000611 ("intentional scheme or device to avoid compliance"); GOV001784 ("'schemes or devices' used to circumvent compensation limits"); GOV001788 ("emerging ways AIPs, agents, and service providers might try to avoid the caps"); GOV001791 ████████████████████████████████ ). Where Brisk ████████████ ████████████████████████████████████████████ ████████████████████████████ Finally, if the three conditions truly already triggered a scheme or device, RMA would not have gone to such great lengths to adopt MGR-26-002.1.

10

As to "whether the rule effectively amends a prior legislative rule," for the reasons shown above, MGR-26-002.1 amends—not interprets—¶ 2(g). Finally, RMA had ██████████████

██████████████████████████████████████████████████████████████

████████ Dkt. 42-1, at 26-27), Brisk withdraws that argument.

### b.     The "contract" exception to notice-and-comment rulemaking under § 553(a)(2) is not applicable here.

The D.C. Circuit Court of Appeals, in dicta, questioned whether a "mandatory" contract—as opposed to a "bargained-for, voluntary" one—is a "contract" under § 553(a)(2). *Guardian Federal Savings & Loan Association v. Federal Savings & Loan Insurance Corporation*, 589 F.2d 658, 664 (D.C. Cir. 1978). As expected, RMA emphasized that it is dicta. (Dkt. 42-1, at 29). But the principle is persuasive because a mandatory government contract for a program participant is more akin to a regulation that an agency can implement unilaterally. Under the FCIA, the FCIC "may enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business, as determined by the Board." 7 U.S.C. § 1506(l). Given FCIC can both enter contracts and issue regulations, FCIC could just as easily have issued a regulation implementing the cap on agent compensation, as opposed to including it in the SRA. FCIC should not be permitted to avoid notice and comment by including in the mandatory SRA a rule only very loosely tied to a contract. This is especially important in this circumstance where, for the reasons explained above, § 1508(k)(2) does not authorize FCIC to include a compensation cap in the SRA.

RMA states that the SRA is "voluntary" (Dkt. 42-1, at 29) but does not explain how given that AIPs wishing to participate in the FCIC must sign it each year. RMA implies the SRA was "bargained-for" because MGR-26-002.1 states that the cap on agent compensation was added to the 2011 SRA "[a]fter extensive negotiations" (*id.*), but provides no explanation of the nature of those negotiations. The "negotiations," for example, could have been akin to notice and comment,

11

with AIPs providing and FCIC considering feedback, but, at the end of the day, FCIC alone deciding what SRA terms to include.

MGR-26-002.1 does not "clearly and directly" involve the SRA because (i) contrary to RMA's assertion, MGR-26-002.1 does not interpret "compensation; and (ii) the cap on agent compensation from which MGR-26-002.1 derives is not authorized to be included in the SRA and, at any rate, is only very loosely tied to the SRA terms.

### 3. The Court should set aside MGR-26-002.1 under § 706(2)(A) because it is arbitrary and capricious.

#### a. MGR-26-002.1 is arbitrary and capricious because it fails to comply with the change-in-position doctrine.

MGR-26-002.1 violates the change-in-position doctrine because (i) RMA contends ███████ ██████████████████████████████████████████████████████████; and (ii) RMA implicitly concedes ███████████████████████████████████████.

#### 1. RMA continues to argue ██████████████████

Paragraph 2(g) states quoting and processing software is not compensation, except in one condition ("except that payments for such software paid to an agent, agency, or affiliate who sells or services eligible crop insurance contracts written by the AIP will be deemed to be compensation"). (GOV000606). MGR-26-002.1 creates three new conditions ("financing," "influencing," and "exclusivity") where ¶ 2(g) does not apply. In its opening brief, Brisk did not argue that the bulletin failed to "display awareness" of the change to ¶ 2(g). Although the bulletin is vague on the issue (e.g., stating it merely "clarifies" how payments should be treated), Brisk gave RMA the benefit of the doubt because, unlike MGR-26-002, MGR-26-002.1 at least acknowledges ¶ 2(g). (GOV001784-85).

But in its opposition brief, RMA argues ███████████████████████████ ████████████████████ Dkt. 42-1, at 30; *see id.* at 32 ████████████████

12

██████████████████████████████████████████████████████████

████████████████████ ). RMA's refusal to acknowledge ███████████████

████████████████████████████████████████████ *See Am. Bar*

*Ass'n v. U.S. Dep't of Educ.*, 370 F.Supp.3d 1, 32 (D.D.C. 2019) ("[The agency's] refusal to

concede that it changed its practices when it adopted the standards effectively precluded it from

satisfying the APA's basic procedural requirements when it did so.").[6]

█ ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████ " (Dkt. 17, at 79:16-18). ███████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ (Dkt. 15, at 10). ███

████████████████████████████████████████████████

RMA argues ███████████████████████████████████████

███████████████████████████████████████████████ (Dkt.

42-1, at 41, 42). It says ███████████████████████████████

████████████████████████████████████████████████████████

(*Id.* at 12, 26, 42; *see id.* at 28 ██████████████████████████

████████████████ )). █████████████████████████████████████

████████████████████████████████████████████

---

[6] Because RMA argues as part of its cross-motion that ████████████████████████
████████████████████████ (Dkt. 42-1, at 41-42), Brisk may argue
otherwise herein, ███████████████████████████████████ .

To try to avoid ████████████████████████, RMA argues ████████████

████████████████████████████████████████████████

████████████████████████████████████████ (Dkt. 42-1, at 31).

RMA ignores that, as explained above, IS-11-006 defines a "scheme or device" to exclude non-compensation, such that no "quoting and processing software" payment can constitute a scheme or device unless it falls within an exception to ¶ 2(g). MGR-26-002.1 accordingly amends ¶ 2(g) to add three new exceptions to it but, for some reason, RMA refuses to call the bulletin a change.

RMA argues that, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ (Dkt. 42-1, at 2, 41-42). As its name indicates, however, the doctrine requires an agency to "'display awareness that [it is] changing position[.]'" *Food & Drug Admin. v. Wages & White Lion Inv., LLC*, 604 U.S. 542, 568 (2025) (citations omitted). Displaying awareness of alleged "clarifications" is insufficient.

2.    **RMA implicitly concedes that** ████████████████
████████████████████████████

RMA's opposition brief has a subheading stating: "████████████████████

████████████████" (Dkt. 42-1, at 43). ████████████████████████

████████████████████████████████████████. Although the

████████████████████ (i) RMA does not dispute that ████████████████

████████████████████████████████████████████████

████████████████████" (Dkt. 42-1, at 26-27 ████████████████

████████████████████████████████████████████████

14

███). Because neither ███████████████████████████████████████████████, ████

█████████████████████████████████████████████████████████████████████████

In fact, RMA's brief reads ████████████████████████████████████

███████████████████████████████████████████████████ (*See* Dkt. 42-1, at 43

█████████████████████████████████████████████████████████████████████████

█████████████████████████. RMA spends the entire section arguing ████████████████

████████████████. (*Id.* at 43-45). But this assessment—████████████████████████

█████████████████████████████████████████████████████████████████████████

███████ *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. Trump*, 298 F.Supp.3d 209,

237 (D.D.C. 2018) ("[P]ost hoc explanations that the agency did not articulate when it acted are

insufficient."); *Villarreal-Dancy v. U.S. Dep't of Air Force*, 633 F.Supp.3d 19, 32 (D.D.C. 2022)

(courts "may not consider [an agency's] arguments pressed for the first time in litigation").

RMA's post hoc reasons ████████████████████████████████████████████

████████████████████████ RMA makes the speculative argument that "█████████████

█████████████████████████████████████████████████████████████████████████

███████" (Dkt. 42-1, at 44). This is easily rebutted by the ████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████. (*See* GOV000025; GOV000109-10; GOV000121-28;

GOV000655-56; GOV001238; GOV001240; GOV001679-80; GOV001780; GOV001791).

RMA asks rhetorically █████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████████████████████ (Dkt. 42-1, at 8). The answer is simple and

reasonable; █████████████████████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████.

(GOV000124). ███████████████████████████████

███████████████████████████████████████████

RMA challenges ████████████████████████████████

███████████████████████████████████████████

████ (Dkt. 42-1, at 44). ██████████████████████████

███████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████

(GOV001262; GOV000455 (" ██████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████.

RMA argues ███████████████████████████████████

██████████████████████████████████████ (Dkt. 42-1, at

44). ████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████. (GOV001438 ( ████████████

███████████████████████████████████████████

GOV00118 (███████████████████████████████████████████

███████); GOV001238; GOV001240).

███████████████████████████████████████████████

███████████████████████████████████████████ (*See* Dkt. 42-1, at 44-45).

███████████████████████████████████████████████

███████████████████████████████████████████████ (*Id.*

at 45). RMA cites ██████████████████████████████████

███████████████████████████████████████████████

> **b.    MGR-26-002.1 is arbitrary and capricious because it is neither reasonable nor reasonably explained.**

> > **1.    The three conditions are neither reasonable nor reasonably explained.**

For the reasons explained below, all three conditions in MGR-26-002.1—the "financing"

condition, "influencing" condition, and "exclusivity" condition—are arbitrary and capricious.

> > > **a.    The "financing" condition is neither reasonable nor reasonably explained.**

██████████████████████████████████████████████

███████████. Brisk had argued that, ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████. (Dkt. 40-3, at 34-

35, 36). ███████████████████████████████████████████. (Dkt.

42-1, at 32 ("████████████████████████████████████████

███████████████████████████; *id.* at 35 ("████████████████

███████████████████████████████████████████████

██████████████████████"); *id.* ("██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Because

the "financing" condition targets conduct that, standing alone, is not problematic, the condition is

necessarily overbroad and thus lacks "a rational connection between the facts found and the choice

made." *See IGas Holdings, Inc. v. Envt'l Prot. Agency*, 146 F.4th 1126, 1142 (D.C. Cir. 2025).

An agency's decision is arbitrary and capricious when it is "unmoored from the purposes

and concerns" of the underlying statutory scheme. *Judulang v. Holder*, 565 U.S. 42, 64 (2011).

The purpose of the cap on agent compensation is to protect against AIP insolvency (GOV000611),

and the purpose of ¶ 2(g) is to not count against the cap the cost of quoting and processing software

because it is a necessary, administrative tool (GOV000593; GOV000601). RMA does not dispute

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████.[7] Because RMA fails to show that the "financing" condition serves either of those

two purposes—and thus any purpose—the condition is arbitrary and capricious.

RMA argues that an agent financing a software provider ████████████████████

████████████████████████████████████ (Dkt. 42-1, at 34-35). This statement

loses sight of a few issues. First, ██████████████████████████████████

██████████████████████████████ *See* GOV000606). Second, ██████████████████

---

[7] In its opening brief, Brisk argued that █████████████████████████████████
█████████████████████████████████████████████████████████ (Dkt. 40-
3, at 34). RMA states that the argument ████████████████████████████████
████████████████████████████████████ (Dkt. 42-1, at 34). RMA
misses the point: If the purpose of ¶ 2(g) is to exempt quoting and processing software from agent
compensation because the software is a necessary tool, it makes sense to deviate from that rule and
create an exception to it only if circumstances giving rise to the exception render the software no
longer necessary.

████████████████████████████████████████████████████ Regardless of how a

software provider uses the funds, the AIP has already paid the funds.

RMA once again wrongly asserts, without basis, that ████████████████████

████████████████████████████████████████████████ (Dkt. 42-1, at 35). RMA

also wrongly assumes that ███████████████████████████████████████████████

████████████████████████████████████████████████████. (*Id.*).

Although MGR-26-002.1 does not state it applies retroactively, ██████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████ (GOV000606). Finally, contrary to

RMA's assertion, for the reasons explained above, MGR-26-002.1 is "substantively inconsistent"

with ¶ 2(g) because the former creates three new exceptions not present in the latter.

> **b.     The "influencing" condition is neither reasonable nor reasonably explained.**

RMA ignores most of Brisk's arguments relating to the "influencing" condition, including

the following:

> • The "influencing" condition does not protect AIP solvency.

> • RMA failed to consider relevant data, namely the importance of software providers receiving user input and feedback.

> • MGR-26-002.1 has two internal inconsistencies ("influence" vs. "authority to influence," and "influencing service provider" vs. "influencing service provider's work").

> • The SRA states that "affiliates"—not just AIPs—"shall develop, implement, and maintain information controls and systems," and section IV(h)(1) of the SRA means only that AIPs bear ultimate responsibility.

> • "Software provided by an AIP" and "software that can be adapted to match the benefits desired by the agent" are not mutually exclusive or contradictory.

19

• The "influencing" condition is retroactive, and pre-bulletin "influencing" could have been grandfathered in.

(Dkt. 40-3, at 36-39).

As for the few arguments RMA addresses, RMA states, " (Dkt. 42-1, at 37). As explained with the "financing" condition, if RMA wishes to create an exception to ¶ 2(g), the proper consideration is whether the circumstances giving rise to the exception render the quoting and processing software no longer a necessary tool. Also, RMA's logic is flawed.

RMA argues

(*Id.* at 37-38). These responses do not adequately address Brisk's identified concerns about lack of notice. RMA provides no insight on the intended scope of "influence." For example, if a service provider receives an email from an agent with helpful feedback on the software, and the provider incorporates the feedback, has the software suddenly been converted into agent compensation? Also, throughout its brief, RMA refers

. (*Id.* at 25                *id.* at 27 ; *id.* at 38 ("                ")). RMA need not provide "precision," but it must provide sufficient notice of what will trigger agent compensation.

        c.       **The "exclusivity" condition is neither reasonable nor reasonably explained.**

20

From the outset of this case, Brisk has said that the "exclusivity" condition does not support, and in fact undermines, the objective of the cap on agent compensation, *i.e.*, to prevent AIP insolvency. As Brisk explained in its opening brief:

> … Nor does the "exclusivity" condition serve the "protecting AIP solvency" objective because more agents having access to software does not somehow lower AIP costs. And, on the contrary, the "exclusivity" condition undermines the solvency goal because it provides that, if all agents have access to software, the funds an AIP would pay for the software (potentially millions of dollars) do not count towards the cap on agent compensation, thereby cutting into the very AIP funds the cap is designed to protect.

(Dkt. 40-3, at 39-40).

RMA misstates Brisk's position by stating "███████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████" (Dkt. 42-1, at 38). RMA likely answered the argument with a question because there is no legitimate counterargument: ████████████████████ ████████████████████████████████████████████████████. RMA also states: "████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████ (*Id.*). Brisk does not understand what that statement means because ███████ ████████████████████████████████████████████████ █████████████████

RMA accidentally tips its hand by arguing ████████████████████████ ████████████████████████████████" (*Id.*). That is what this is really about, ███████ ████████████████████████████████████████████████

████████████████. That is not the purpose of the compensation rules, and not within the scope of RMA's regulatory authority.

### 2.    The "Schemes or Devices" guidance is neither reasonable nor reasonably explained.

In its opening brief, Brisk argued the "Schemes or Devices" guidance is "a disaster for regulated parties" because "[i]t is entirely unclear what it means, what it encompasses, and whether and to what extent it duplicates and/or overlaps with any of the three conditions." (Dkt. 40-3, at 41-42). Brisk also presented 11 questions raised by the guidance's vague nature. (*Id.*). RMA responded only ████████████████████████████

████████████████████████████████████████

████████████████████████████████████ (Dkt. 42-1, at 39). It further stated ██████████████████████████████

████████████████████. (*Id.*).

This is beyond a regulated party simply having questions; the guidance utterly fails in providing regulated parties with clear notice as what the guidance encompasses, especially vis-à-vis the three conditions. That RMA could not answer one of the 11 questions or provide any clarity as to what the guidance is intended to encompass further highlights its vague nature.

### 3.    It is not reasonable for MGR-26-002.1 to distinguish between third-party software and in-house software.

RMA's explanation for why MGR-26-002.1 distinguishes between third-party software and in-house software lacks merit. RMA, focusing only on ██████████████████, argues that,

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ (Dkt. 42-1, at 39-40). RMA thus implicitly concedes ████████████████████████

22

███████████████████████████████████████████████████████. Further, RMA

is wrong that ████████████████████████████████████████████████

████████████. ████████████████████████████████████████████████

████████There thus remains no valid reason for MGR-26-002.1 targeting only software providers.

## II.   CONCLUSION

For the above reasons, and those set forth in Brisk's opening brief, Brisk respectfully asks

the Court to grant Brisk's motion and deny RMA's cross-motion, and set aside MGR-26-002.1.

Respectfully submitted,

By:   /s/ Charles A. Zdebski
      Charles A. Zdebski (#451075)
      Chad E. Kurtz (#1016934)
      COZEN O'CONNOR
      2001 M Street NW, Suite 500
      Washington, DC 20036
      Tel: (202) 280-6528
      czdebski@cozen.com
      ckurtz@cozen.com

      *Attorneys for Plaintiff,*
Dated: June 12, 2026              *Brisk Insurance Services LLC*

23

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRISK INSURANCE SERVICES LLC, | |
| Plaintiff, | |
| v. | Civil Action No.: 1:26-cv-00842 (SLS) |
| FEDERAL CROP INSURANCE CORPORATION *et al.*, | |
| Defendants. | |

**[PROPOSED] ORDER**

AND NOW, this _____ day of _____, 2026, upon consideration of the Cross-Motion to Dismiss, or in the Alternative, for Summary Judgment ("Cross-Motion") filed by defendants Federal Crop Insurance Corporation ("FCIC"); Risk Management Agency ("RMA"), an agency of the United States Department of Agriculture; and Patricia Swanson, in her official capacity as Manager of FCIC and Administrator of RMA, and the brief in opposition thereto filed by plaintiff Brisk Insurance Services LLC, and any hearing and/or oral argument on the Cross-Motion, it is hereby **ORDERED** that the Cross-Motion is **DENIED**.

BY THE COURT:

_____
The Honorable Sparkle L. Sooknanan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of June 2026, I caused Plaintiff's Reply Brief in Support of Motion for Summary Judgment/Opposition to Cross-Motion to Dismiss, or in the Alternative, for Summary Judgment to be served via ECF on all counsel of record.

 /s/ Charles A. Zdebski  
Charles A. Zdebski