UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRISK INSURANCE SERVICES LLC,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL CROP INSURANCE CORPORATION *et al.*,<br><br>Defendant. | Civil Action No. 26-0842 (SLS) |

**CONSENT MOTION FOR LEAVE TO FILE UNDER SEAL**

Defendants Federal Crop Insurance Corporation, Risk Management Agency, and Patricia Swanson, in her official capacity as Manager of the Federal Crop Insurance Corporation and as Administrator of Risk Management Agency (collectively the "Department"), through undersigned counsel, respectfully move for leave to file the Parties' proposed redactions to the Court's Memorandum Opinion on the docket under seal. Pursuant to Local Civil Rule 5.1(h)(1), the Department is filing the Parties' proposed redactions to the Court's Memorandum Opinion under seal pending resolution of this motion. Pursuant to Local Civil Rule 7(m), the undersigned has conferred with counsel for Plaintiff, who consents to the relief sought, including the proposed redactions.

* * *

Dated: July 1, 2026
Washington, D.C.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ Robert J. Morris, II*

ROBERT J. MORRIS, II
D.C. Bar #1719434
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2534
robert.morris@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRISK INSURANCE SERVICES LLC,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL CROP INSURANCE CORPORATION *et al.*,<br><br>Defendant. | Civil Action No. 26-0842 (SLS) |

**MEMORANDUM AND POINTS OF AUTHORITIES IN SUPORT OF CONSENT MOTION FOR LEAVE TO FILE UNDER SEAL**

# TABLE OF CONTENTS

Table of Contents ........ i

Table of Authorities ........ ii

Legal Standards ........ 1

Argument ........ 2

I. Discussions About Confidential Business Records and Whistleblower Complaints in the Administrative Record Should Be Filed Under Seal ........ 2

A. The Hubbard Factors Favor Filing the Department's Opposition and Cross-Motion Under Seal ........ 4

Conclusion ........ 6

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abdelhady v. George Wash. Univ.*,
89 F.4th 955 (D.C. Cir. 2024) ..... 4
*Alexander v. F.B.I.*,
186 F.R.D. 54 (D.D.C. 1998) ..... 3
*Alyeska Pipeline Service Co. v. EPA*,
856 F.2d 309 (D.C. Cir.1988) ..... 3
*American Bioscience, Inc. v. Thompson*,
243 F.3d 579 (D.C. Cir. 2001) ..... 2
*Cliq Inc. v. Fed. Trade Comm'n*,
No. Civ. A. No. 26-488 (JEB), 2026 WL 592362 (D.D.C. Mar. 3, 2026) ..... 5
*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*,
339 F.R.D. 334 (D.D.C. 2021) ..... 3
*EEOC v. Nat'l Children's Ctr., Inc.*,
98 F.3d 1406 (D.C. Cir. 1996) ..... 2
*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*,
No. 204CV01199DAEGWF, 2008 WL 11388585 (D. Nev. June 18, 2008) ..... 3
*Hubbard*,
650 F.2d ..... 1
*In re Nat'l Broad. Co.*,
653 F.2d 609 (D.C. Cir. 1981) ..... 2
*Metlife, Inc. v. Fin. Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017) ..... 2, 5
*Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv., Co.*,
151 F.R.D. 478 (D.D.C. 1993) ..... 4, 5
*Michaels v. NCO Fin. Sys. Inc.*, Civ. A.,
No. 16-1339 (ACR) (ZMF), 2023 WL 4857413 (D.D.C. July 31, 2023) ..... 5
*New York v. Microsoft Corp.*,
Civ. A. No. 98-1233 (CKK), 2002 WL 1315804 (D.D.C. May 8, 2002) ..... 3
*Nixon v. Warner,*
*Comms.*, 435 U.S. 589 (1978) ..... 3
*Tavoulareas v. Wash. Post Co.*,
111 F.R.D. 653 (D.D.C. 1986) ..... 5
*United States v. Garde*,
673 F. Supp. 604 (D.D.C.1987) ..... 3

Statutes

5 U.S.C. § 706(2)(A) ..... 1

Defendants Federal Crop Insurance Corporation, Risk Management Agency, and Patricia Swanson, in her official capacity as Manager of the Federal Crop Insurance Corporation and as Administrator of Risk Management Agency (collectively the "Department"), through undersigned counsel, respectfully move for leave to file the Parties' proposed redactions to the Court's Memorandum Opinion on the docket under seal. The Parties met and conferred for the redactions, and the redactions are unopposed by both Parties.

Pursuant to the Stipulated Protective Order, the Parties may designate documents as confidential and AEO. ECF No. 22, ¶¶ 2-4. The Department has designated the following documents as confidential: (1) Approved Insurance Provider ("AIP") contracts and confidential business information involving Brisk, other service providers, and AIPs; and (2) administrative emails, meeting notes, and analysis documentation involving confidential business information related to Brisk, other service providers, and AIPs. The Department has also designated the following documents as AEO: (1) AIP software contracts with vendors other than Brisk; (2) "confidential business information that [Brisk] would not have access to and could use to gain a market or negotiating advantage with [AIPs]"; and (3) portions of whistleblower complaint documents that identify, or the Department believes in good faith could reasonably be used by Brisk to identify, the whistleblowers. ECF No. 22 ¶ 3.

## LEGAL STANDARDS

"[W]hen a court is presented with a motion to seal or unseal, it should weigh: '(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.'" *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665–66

(D.C. Cir. 2017) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)). A seal may be maintained only "if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires." *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981) (internal quotation marks and citations omitted).

## ARGUMENT

### I. **Discussions About Confidential Business Records and Whistleblower Complaints in the Administrative Record Should Be Filed Under Seal**

Under the holding in *American Bioscience, Inc. v. Thompson*, 243 F.3d 579, 583 (D.C. Cir. 2001), this Court cannot evaluate whether an agency action is arbitrary or capricious without an administrative record.

The Department has designated the following documents as confidential: (1) Approved Insurance Provider ("AIP") contracts and confidential business information involving Brisk, other service providers, and AIPs; and (2) administrative emails, meeting notes, and analysis documentation involving confidential business information related to Brisk, other service providers, and AIPs. The Department has also designated the following documents as AEO: (1) AIP software contracts with vendors other than Brisk; (2) "confidential business information that [Brisk] would not have access to and could use to gain a market or negotiating advantage with [AIPs]"; and (3) portions of whistleblower complaint documents that identify, or the Department believes in good faith could reasonably be used by Brisk to identify, the whistleblowers. ECF No. 22 ¶ 3.

The confidential and AEO documents involve confidential business information, which have been recognized as appropriate to file under seal. "Protecting an entity's 'competitive

standing' through retained confidentiality in business information has been recognized as an appropriate justification for restriction of public or press access." *New York v. Microsoft Corp.*, Civ. A. No. 98-1233 (CKK), 2002 WL 1315804, at *1 (D.D.C. May 8, 2002) (quoting *Nixon v. Warner Comms.*, 435 U.S. 589, 598 (1978)); *see also Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 341 (D.D.C. 2021) (quoting *Alexander v. F.B.I.*, 186 F.R.D. 54, 58 (D.D.C. 1998) ("Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys and experts, particularly where there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party.").

Similarly, "several courts recognize that whistleblowers may need protection from retaliation." *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 204CV01199DAEGWF, 2008 WL 11388585, at *5 (D. Nev. June 18, 2008); *see also United States v. Garde*, 673 F. Supp. 604 (D.D.C.1987) (denying motion to compel the name of whistleblowers and recognizing the potential for retaliation against the confidential whistleblowing sources and the lack of assurance that the confidential sources would be protected against retaliation; *Alyeska Pipeline Service Co. v. EPA*, 856 F.2d 309 (D.C. Cir.1988) (declining to order the Environmental Protection Agency to turn over documents in part because release of the documents would permit the identification of the employees who provided the document and thereby subject them to the risk of harassment or reprisals); *Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv., Co.*, 151 F.R.D. 478, 482 (D.D.C. 1993) (denying motion to compel the identity of confidential sources or turn over documents that could identify confidential sources unless and until the Court is satisfied that the sources will be adequately protected against retaliation).

### A. The Hubbard Factors Favor Filing the Department's Opposition and Cross-Motion Under Seal

The Department seeks leave to file the Parties' proposed redactions to the Court's Memorandum Opinion that discusses documents labeled confidential and AEO under seal. "[A]s with any presumption, the preference for public access is not ironclad." *Abdelhady v. George Wash. Univ.*, 89 F.4th 955, 958 (D.C. Cir. 2024). The D.C. Circuit has "identified six factors to guide the inquiry into whether the presumption is overcome: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to the disclosure, and their identity; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Id.* "[T]hose are the factors a court should weigh in ruling on a motion to seal . . . a judicial record." *Id.* These factors are known as the "*Hubbard* factors," *id.*, named for *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980), which first articulated them.

The *Hubbard* factors firmly favor filing the Parties' proposed redactions to the Court's Memorandum Opinion under seal. The need for public access to the materials at issue is minimal because the parties will discuss portions of these materials that bear on the present dispute in their public filings, so the only portions of these materials on which the parties' briefing will shed no light are those that have no bearing on this case. For essentially the same reason, the purpose for which the materials are being introduced does not weigh toward disclosure. There has been no prior public access to these materials. And both parties object to disclosure.

Finally, the privacy interests in the contents of the materials discussed and the possibility of prejudice are significant. The materials at issue involve assertions of confidential business information and whistleblower documents. Because the information currently redacted contains

sensitive business information that could be used by Brisk's competitors, "the privacy interests are substantial." *Cliq Inc. v. Fed. Trade Comm'n*, No. Civ. A. No. 26-488 (JEB), 2026 WL 592362, at *2 (D.D.C. Mar. 3, 2026) (quoting *Michaels v. NCO Fin. Sys. Inc.*, Civ. A. No. 16-1339 (ACR) (ZMF), 2023 WL 4857413, at *5 (D.D.C. July 31, 2023); *see also Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 671 (D.C. Cir. 2017) ("For documents containing sensitive business information and trade secrets, those factors often weigh in favor of sealing and ... courts commonly permit redaction of that kind of information."); *Tavoulareas v. Wash. Post Co.*, 111 F.R.D. 653, 655–56 (D.D.C. 1986) (maintaining seal of private business information where a third party sufficiently demonstrated that the release of the information would harm its business).

Additionally, the documents discussed contain whistleblower complaints which have a substantial privacy interest. *See e.g., Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv., Co.*, 151 F.R.D. 478, 482 (D.D.C. 1993) (denying motion to compel the identity of confidential sources or turn over documents that could identify confidential sources unless and until the Court is satisfied that the sources will be adequately protected against retaliation). Moreover, pursuant to Appendix I (b) and (c) of the Standard Reinsurance Agreement, the Department officials are obligated to protect confidential business information. Appendix I, ¶¶ (b)(3) and (c).

* * *

## CONCLUSION

For these reasons, this Court should grant the Department leave to file the Parties' proposed redactions to the Court's Memorandum Opinion that discusses documents labeled confidential and AEO pursuant to the protective order under seal.

Dated: July 1, 2026
Washington, D.C.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ Robert J. Morris, II*
ROBERT J. MORRIS, II
D.C. Bar #1719434
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2534
robert.morris@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRISK INSURANCE SERVICES LLC,

Plaintiff,

v.

FEDERAL CROP INSURANCE CORPORATION *et al.*,

Defendants.

Civil Action No. 26-0842 (SLS)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion for leave to file under seal, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that pursuant to the inherent authority recognized in *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980) and the Protective Order, Defendants may file the the Parties' proposed redactions to the Court's Memorandum Opinion.

SO ORDERED:

______________________
Date

______________________
SPARKLE L. SOOKNANAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRISK INSURANCE SERVICES LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL CROP INSURANCE CORPORATION *et al.*,<br><br>*Defendants*. | Civil Action No. 26 - 842 (SLS)<br>Judge Sparkle L. Sooknanan<br>**UNDER SEAL** |

## MEMORANDUM OPINION

Brisk Insurance Services LLC (Brisk) sells software to private companies that provide crop insurance on behalf of the federal government. Brisk brings this Administrative Procedure Act (APA) action to challenge MGR-26-002.1, a bulletin issued by the Department of Agriculture's Risk Management Agency (RMA). Brisk argues that the bulletin, which effectively prohibits its current business model, is arbitrary and capricious in violation of the APA. On this record, the Court agrees. The bulletin was designed to end Brisk's business, and RMA issued it without considering Brisk's views. Because this was arbitrary and capricious, the Court sets aside MGR-26-002.1. In doing so, the Court takes no position on whether Brisk's business model should be sustained in the federal crop insurance industry. But it is axiomatic that agency action must comport with the APA, and RMA's bulletin does not. In such a scenario, the Court has no choice but to set aside the agency action.

## BACKGROUND

### A. Statutory Background

Congress "pioneer[ed]" the field of federal crop insurance in response to a major market failure in the field of agriculture. *FCIC v. Merrill*, 332 U.S. 380, 383 n.1 (1947). Crop production is "affected by so many contingencies, such as winds, hail, frost, drought, ravages of insects, etc.,–contingencies which, while not likely to happen, yet such as may occur,–it would seem that inherently it would be a proper subject for insurance[.]" *In re Hogan*, 78 N.W. 1051, 1052 (N.D. 1899). But for much of our Nation's history, the free market deemed "crop insurance too great a commercial hazard." *Merrill*, 332 U.S. at 383 n.1. "The lack of adequate crop data and a satisfactory actuarial basis upon which to base insurance rates" largely deterred private insurers from engaging in a field with "so many unpredictable risks." *New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 459 (6th Cir. 2024) (internal quotation marks and citation omitted). And the few private insurers that tried "largely failed" to offer a sufficient spread to account for "the danger of extensive crop failures." President's Comm. on Crop. Ins., *Message from the President of the United States Transmitting the Report and Recommendations of the President's Committee on Crop Insurance*, H.R. Doc. No. 75-150, at 3 (1937) (Crop Ins. Rep.).

With the passage of the Federal Crop Insurance Act of 1938, the federal government embarked on a venture that the private market had dismissed as "impossible of successful accomplishment." *Id.* Congress enacted the statute "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance," 7 U.S.C. § 1502(a), largely in response to the widespread devastation to the agricultural industry during the Dust Bowl of the 1930s, *see Easom v. US Well Servs.*, 37 F.4th 238, 244 (5th Cir. 2022). At that time, New Deal federal relief programs had become the "only source of income" for "many farmers" as catastrophic drought caused "a complete loss" of harvests and "feed supplies were

depleted." Crop Ins. Rep. at 1–2. The Federal Crop Insurance Program sought to address the structural market issues causing these "large obligations that the Government ha[d] assumed . . . on account of droughts and other disasters." *Id.* at 3, 12. The 1938 Act established "a pilot program" of crop insurance "for the one crop for which the government had the requisite actuarial data: wheat harvests." *New Heights Farm I*, 119 F.4th at 459 (citing Crop Ins. Rep. at 3).

Between 1938 and the present, Congress expanded the scope of the Federal Crop Insurance Program, seeking to reduce reliance on direct payments and emergency loan programs "to protect agriculture producers from insurable perils." Robert H. Jerry, II, 1 New Appleman on Insurance Law § 56.03 (Library Ed. 2026) (outlining the various legislative enactments since the 1938 Act). Today, the Program insures more than 444 million acres and $150 billion in crop and livestock value, including "over 85% of cropland planted to corn, soybeans, wheat, or cotton[.]" Stephanie Rosch, Cong. Rsch. Serv., R46686, Federal Crop Insurance: A Primer 9 (2021); *see* Stephanie Rosch, Cong. Rsch. Serv., IF12201, Farm Bill Primer: Federal Crop Insurance Program 1 (2022).

Prior to 1980, federal crop insurance was provided directly by the Federal Crop Insurance Corporation. *See All. Ins. Co. v. Wilson*, 384 F.3d 547, 549 (8th Cir. 2004); H.R. Rep. No. 96-430, at 12–13 (1979), *reprinted in* 1980 U.S.C.C.A.N. 3068, 3075. But the Federal Crop Insurance Act of 1980 required the Corporation to administer crop insurance through private insurers "to the maximum extent practicable." 7 U.S.C. § 1508(k)(1); *see also* H.R. Rep. 96-1272, at 17 (1980) (Conf. Rep.), *reprinted in* 1980 U.S.C.C.A.N. 3082, 3087. Since 1998, private insurance companies reinsured by the Corporation sell and service all crop insurance policies offered under the Program. *See* Jerry, 1 New Appleman on Insurance Law § 56.04 (2026).

Today, "[t]he crop insurance program is, to say the least, complex." *United States ex rel. Kraemer v. United Dairies, L.L.P.*, 82 F.4th 595, 598 (8th Cir. 2023) (citation omitted). The

Federal Crop Insurance Corporation, "a government corporation within the Department of Agriculture," *id.* (characterizing 7 U.S.C. §§ 1502(a), 1503), "provide[s] reinsurance for insurers of [] producers of agricultural commodities grown in the United States," 7 U.S.C. § 1508(a)(1). Accordingly, the Corporation "enlists private crop insurers to sell policies written on terms, including premium rates, approved by" it. *ACE Am. Ins. Co. v. FCIC*, 732 F. App'x 5, 6 (D.C. Cir. 2018) (per curiam) (internal quotation marks and citation omitted). Meanwhile, the Risk Management Agency (RMA), also in the Department of Agriculture, "supervises and administers the federal crop insurance program" operations. *Id.* (characterizing 7 U.S.C. § 6933). The Court generally refers to the Federal Crop Insurance Corporation and the RMA jointly as the "FCIC." *See id.* (using a similar approach).

Federal crop insurance policies are sold by private insurers approved by the FCIC, known as approved insurance providers (AIPs). *United Dairies*, 82 F.4th at 598; *see* 7 USC § 1502(b)(2). There are currently 12 AIPs approved by the FCIC. *See* 7 C.F.R. § 400.164(e). AIPs then rely on "a network of independent agents [to] sell and service the federal policies." Dennis A. Shields, Cong. Rsch. Serv., R40532, Federal Crop Insurance: Background 23 (2015). "The agents are paid commission on the policies their clients purchase." *United Dairies*, 82 F.4th at 599.

The AIPs "obtain reinsurance from FCIC pursuant to a Standard Reinsurance Agreement (SRA)," a contractual arrangement "negotiated between FCIC and the private crop insurance industry." *ACE Am. Ins.*, 732 F. App'x at 6. This reinsurance arrangement operates as follows:

> [W]hen a farmer incurs a loss to an insured crop, the farmer files a claim with the [AIP]. The [AIP] assesses the amount of the loss, pays the farmer's claim for damage, and then seeks reimbursement from the FCIC. The FCIC reimburses the [AIP] for all or part of the amount paid to the farmer, depending on the particular arrangement set forth in the SRA.

*United States v. Hawley*, 619 F.3d 886, 889 (8th Cir. 2010). "The FCIC also subsidizes a portion of the premiums paid by the insured farmers," *id.*, covering about 62% of total premiums and

100% of catastrophic coverage premiums, Rosch, Farm Bill Primer: Federal Crop Insurance Program, at 1.

The FCIC also subsidizes some "of the AIP's operating and administrative expenses." *United Dairies*, 82 F.4th at 598. One such expense is agent compensation, which includes commissions, salary, profit sharing, and other forms of payment to agents and any associations they work for. SRA, §§ I, III(a)(4) (AR 489, 512–13).[1] Ultimately, what constitutes agent compensation is determined "in accordance with FCIC procedures," which includes "applicable handbooks, manuals, *bulletins*, memoranda or other written directives issued by FCIC." *Id.* § 1 (AR 489–90) (emphasis added). Since 2011, the SRA caps agent compensation to no more than 80 percent of the total amount of the administrative and operational subsidy from the FCIC. *Id.* § III(a)(4)(B) (AR 512); MGR-10-011.1 Bulletin (AR 604–11).

The "FCIC requires the private crop insurers to renew [SRAs] annually." *ACE Am. Ins.*, 732 F. App'x at 6. Thus, the SRA instructs each AIP to submit a "Plan of Operations" to the FCIC by April 1 of each year to renew participation in the program for the following reinsurance year that starts on July 1. SRA § IV(f)(2) (AR 522). The plan of operations must identify every "service provider" that the AIP will use for the upcoming reinsurance year. SRA App'x II, § IV(c) (AR 1832). And the FCIC must approve the plan for the AIP to operate under the next reinsurance year's SRA. SRA § IV(f)(2)(C) (AR 522). The annual plans must comply with the FCIC's procedures, which include bulletins issued by the FCIC. *See* SRA § I (AR 490, 493).

[1] The administrative record (AR) is located at ECF Nos. 37 and 55-3. Unsealed, redacted versions are available at ECF Nos. 38 and 56. Some portions of the administrative record were submitted for in camera review with the consent of both Parties. *See* Joint Status Report (June 15, 2026), ECF No. 53; Notice of Lodging, ECF No. 57.

The FCIC is also charged with certain powers "to improve compliance with, and the integrity of, the Federal crop insurance program." 7 U.S.C. § 1515(a)(1). For instance, the AIPs must comply with the FCIC's procedures, which includes "applicable handbooks, manuals, bulletins, memoranda or other written directives issued by FCIC." SRA §§ I, IV(h)(2) (AR 490, 524). And the FCIC can impose sanctions for violations of the statute, the SRA, or those policies. *See* 7 U.S.C. § 1515(h); SRA § IV(h)(4), (6) (AR 525).

### B. Factual and Procedural Background

#### 1. MGR-10-011.1 Bulletin

On October 29, 2010, the FCIC issued Manager's Bulletin MGR-10-011.1, which provided guidance defining agent compensation under the SRA. AR 604. Most notably, the MGR-10-011.1 Bulletin contained a software exception to the SRA's definition of agent compensation. In relevant part, it stated that "[t]he following item[] do[es] not constitute compensation":

> Computer software, including licensing fees, provided by an AIP to an agent, agency, or affiliate for providing eligible crop insurance contract premium quotes to producers or performing [] processing tasks . . . . except that payments for such software paid to an agent, agency, or affiliate who sells or services eligible crop insurance contracts written by the AIP will be deemed to be compensation.

AR 606. In memoranda issued from 2011 onwards, the FCIC indicated that its reason for not treating software provided by an AIP to an agent as compensation was that software was a tool that was necessary for an agent to service eligible crop insurance contracts. In explaining why a similar tool—"free map books"—was not compensation, the memo stated:

> An AIP wishes to provide its agents free map books with Common Land Units (CLUs) for completing Acreage Reports. This would not be considered compensation because such map books are tools, similar to the software that is not considered compensation under item 2(g) of the Bulletin, necessary for the agent to perform the tasks to service eligible crop insurance contracts.

AR 601, 621.

### 2. Formation of Brisk

[redacted] AR 17. [redacted] AR 125–28. [redacted] AR 655. [redacted]. *Id.* [redacted]. *Id.*

[redacted] *Id.* [redacted]. [redacted] AR 3. [redacted] AR 656. [redacted] *Id.*; AR 634. [redacted]. AR 635.

[redacted] AR 656. [redacted] *Id.* [redacted] AR 644.

[redacted] AR 18. [redacted] *Id.* [redacted] AR 656. [redacted] AR 645–46. [redacted] AR 657. [redacted] *Id.* [redacted] AR 657. [redacted]. [redacted] *Id.*; AR 653.

[redacted] AR 657. [redacted] *Id.*

### 3. Complaints About Brisk

[redacted] AR 453, 663, 662–68, 893. [redacted] AR 664. [redacted] *See* AR 54–56, 187–94; [redacted] AR 54–56. [redacted] AR 187–94. [redacted] AR 90–91. [redacted] AR 33, 61, 455, 896.

[redacted]

[redacted] AR 59—[redacted] AR 54 [redacted]. [redacted] "[redacted] AR 58. [redacted]. AR 462. [redacted]

4. **MGR-25-009 Bulletin**

On November 20, 2025, the FCIC issued Manager's Bulletin MGR-25-009, titled "Agent Compensation - Third Party Software Payments." AR 901. It requested that AIPs provide the RMA with certain information within 10 business days: (1) "documentation for third party computer software and licensing fees paid for and provided by an AIP to an agent . . . for the 2026 reinsurance year," and (2) information about whether the AIP considered "the software or licensing fee counts as agent compensation," alongside an explanation if the answer to that question was no. AR 901–02. Importantly, MGR-25-009 stressed that the FCIC was merely ensuring that parties were not "circumvent[ing] the limitations" in the SRA and existing bulletins—the bulletin never indicated that a new bulletin was in consideration. AR 901.

[redacted]; [redacted] AR 86, 88. [redacted] AR 1794. [redacted]

[redacted] AR 109–10.

### 5. MGR 26.002 Bulletin

[redacted]. AR 477–78. [redacted] AR 1780–82.

On February 20, 2026, the FCIC issued Manager's Bulletin MGR-26-002, entitled "Agent Compensation - Third Party Software Payments." AR 1769–71. MGR-26-002 stated the following "for the 2027 and succeeding reinsurance years":

> [A]n AIP may enter into an agreement with an independent service provider to deliver general policy administration software and support services on behalf of the AIP to all of the AIP's agencies, and payments made by the AIP to the service provider under those circumstances will, as a general matter, not be considered compensation under the SRA. However, payments made by an AIP to a service provider for policy administration software and support services will be deemed a benefit of value and considered compensation under the SRA if any of the following conditions apply: (1) The service provider is funded in whole or in part by an agency or group of agencies that receives the benefit of the software and services; (2) An agency or group of agencies receiving the benefit of the software and services has authority to control the service provider's work; or (3) The software and support services are provided to a select agency or group of agencies rather than being available to the AIP's entire agency force."

AR 1770. Thus, contrary to the guidance in MGR-10-011.1, software would be considered agent compensation if it was financed by, influenced by, or exclusive to any agent or group of agents. *Id.* MGR-26-002 made no reference to MGR-10-011.1. [redacted] AR 1772.

Brisk filed this action on March 10, 2026, to challenge the MGR-26-002 Bulletin, Compl., ECF No. 1, and moved for an emergency stay under Section 705 of the APA, Mot., ECF No. 3. At a hearing on Brisk's motion, the Court observed that MGR-26-002 appeared to violate the APA because it effectuated a change in the agency's position without any awareness of the change or accompanying explanation for the change. *See Brisk Ins. Servs. v. FCIC*, No. 26-cv-842, 2026 WL 875230, at *5 (D.D.C. Mar. 31, 2026). The Court ultimately denied Brisk's request for an emergency stay on the basis that Brisk had failed to show irreparable injury. *Id.* at *5, *7. But recognizing that Brisk faced harm if it did not obtain relief by June 24, 2026, the Court ordered expedited summary judgment briefing. *Id.* at *8. Meanwhile, the FCIC informed the Court that the RMA was "evaluating preparing a new manager's bulletin to supplement MGR-26-002." Status Report (Mar. 27, 2026), at 2, ECF No. 13.

**6. MGR 26.002.1 Bulletin**

On May 11, 2026, the FCIC made good on its promise. It issued Manager's Bulletin MGR-26-002.1, titled "Agent Compensation - Third Party Software Payments," which it explained "supersed[es] the prior action language in MGR 26-002." AR 1784–85. The MGR-26-002.1 Bulletin carried forward and provided "additional detail" on the three features—financing, influencing, or exclusivity—that may make third-party software agent compensation beginning in the 2027 reinsurance year. AR 1784–88, 1800. Specifically, MGR-26-002.1 includes as "agent compensation": (1) AIP payments to a software service provider funded by agents who receive the benefit, (2) AIP payments to a software service provider where agents have authority to control or influence the service provider's work, and (3) AIP payments to a software service provider that is available only to select agents rather than to all agents contracted with an AIP. AR 1785–88. These features were initially identified in MGR-26-002, but MGR-26-002.1 used more detailed language

and provided additional explanation for omitting them from the software exclusion. And while MGR-26-002 stated that software payments "will" be deemed agent compensation if any of the three features are present, MGR-26-002.1 states that such payments "may" be considered agent compensation at the FCIC's discretion. AR 1770, 1785.

Although the MGR-26-002.1 Bulletin claims not to constitute an "approval," "disapproval," or "prohibition" of a particular business practice or payment, it defines software payments that implicate the financing, influencing, or "exclusivity" bars as a "scheme or device" in violation of Section III(a)(4) of the SRA. AR 1784–88. Section III(a)(4) of the SRA prohibits the use of any "scheme or device to circumvent the limitations" on agent compensation in the SRA and "in accordance with FCIC procedures." AR 512–13.

The MGR-26-002.1 Bulletin, unlike its predecessor, referenced the earlier MGR-10-011.1 Bulletin that created the software exemption in the first place. AR 1786. MGR-26-002.1 stressed that MGR-10-011.1 recognized as an impermissible scheme or device any effort to "[e]stablish[] or us[e] a third party . . . to channel payments to agents or agencies to supplement compensation that is subject to the SRA limitations." AR 1785. Although MGR-10-011.1 also excluded certain "computer software" from agent compensation, MGR-26-002.1 determined that the financing, influencing, or "exclusivity" factors are not inconsistent with this exclusion because the software exemption did not apply to "affiliate[s]" of agents. AR 1787. And MGR-26-002.1 noted that "[t]he SRA also defines 'affiliates' broadly to include service providers or entities controlled by, or acting on behalf of, AIPs." AR 1785. Thus, MGR-26-002.1 determined that a payment to a software company that is financed, influenced, or exclusive to an agent constitutes "payments to [] entities affiliated with the agents" and "a[n] [impermissible] scheme or device unless counted as agent compensation." AR 1784–88.

[redacted] AR 1795–99. [redacted]

[redacted]

AR 1796. [redacted]—[redacted] *See* AR 1792, 1797.

### 7. The Present Challenge

Following promulgation of the MGR-26-002.1 Bulletin, Brisk amended its Complaint to challenge it, Am. Compl., ECF No. 36, and moved for summary judgment, Pl.'s Mot., ECF No. 40. The FCIC cross-moved either for dismissal of this action for lack of subject matter jurisdiction and failure to state a claim or for summary judgment. Defs.' Combined Mem. Supp. Mot. Dismiss/Mot. Summ. J. and Opp'n to Pl.'s Mot (Defs.' Mot.), ECF No. 43-3. These motions are fully briefed and ripe for review. Pl.'s Combined Reply & Opp'n to Fed. Defs.' Mot. (Pl.'s Opp'n), ECF No. 50-3; Defs.' Reply, ECF No. 55-2.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of an APA challenge, summary judgment "serves as a mechanism for deciding, as a matter of law, whether the administrative record supports the agency action and whether the agency action is consistent with the APA standard of review." *Int'l Swaps*

*& Derivatives Ass'n v. CFTC*, 887 F. Supp. 2d 259, 266 (D.D.C. 2012) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

"A motion under Rule 12(b)(1) presents a threshold challenge to a court's [subject-matter] jurisdiction." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 69 (D.D.C. 2022) (cleaned up). The plaintiff "bears the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction over [their] claims." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 69 (D.D.C. 2011). When evaluating a motion under Rule 12(b)(1), "the court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Sandoval v. DOJ*, 322 F. Supp. 3d 101, 104 (D.D.C. 2018) (citations omitted).

Under Rule 12(b)(6), a court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks and citation omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an "'inference[] . . . unsupported by the facts set out in the complaint.'" *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted).

## DISCUSSION

The Parties dispute whether the MGR-26-002.1 Bulletin complied with the APA. But before the Court can reach that issue, it must address threshold issues raised by the FCIC about the administrative record and the Court's jurisdiction. Ultimately, the Court concludes that it may hear Brisk's claims. And based on the administrative record properly before the Court, it concludes that

the FCIC's promulgation of the MGR-26-002.1 Bulletin was arbitrary and capricious. Accordingly, the Court sets aside the bulletin.

### A. Threshold Issues

The Court addresses four threshold issues before turning to the merits of Brisk's APA claims. First, the Parties have spilled much ink on what the Court may properly consider as the administrative record. Second, the FCIC argues that Brisk lacks Article III standing. Third, the FCIC argues that Brisk may not challenge MGR-26-002.1 under the APA because it is not final agency action. Fourth, the FCIC argues that Brisk's APA claims do not fall under the Federal Crop Insurance Act's zone of interests.

#### 1. Administrative Record

A court's review under the APA is generally limited to the "administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "To ensure that [a court] review[s] only those documents that were before the agency," "parties [cannot] supplement the record unless they can demonstrate unusual circumstances justifying a departure from this general rule." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (internal quotation marks and citation omitted). There are three "unusual circumstances" where a party can supplement the administrative record:

> (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review.

*Id.*

The Parties have filed various motions to either supplement or strike materials from the administrative record. Pl.'s Mot. to Suppl. Admin. R., ECF No. 39; Pl.'s Mot. to Exclude Swanson Decl., ECF No. 46; Pl.'s Mot. to Partially Strike Defs.' Reply (Pl.'s Mot. Strike), ECF No. 59.

Following a Court-ordered meet and confer, four documents remain in dispute: (1) an April 6, 2026, letter from Brisk to the FCIC (Brisk Letter) expressing its views about the software exclusion after the FCIC announced that it would promulgate a revised bulletin, Ex. A,[2] ECF No. 39-2; (2) a declaration by a Farm Credit representative alleging that some of the materials that the FCIC relied on in promulgating MGR-26-002.1 were fake, Ex. B., ECF No. 39-3; (3) a declaration from the RMA administrator attached to the FCIC's motion that explains the rationale for MGR-26-002.1, Swanson Decl., ECF No. 43-4; and (4) portions of the FCIC's reply brief that Brisk argues contains impermissible arguments. Joint Status Report (June 15, 2026), ECF No. 53. The Court takes these documents in turn.

First, the FCIC urges the Court to exclude the Brisk Letter from the administrative record because the agency did not consider it in promulgating MGR-26-002.1. Defs.' Suppl. Resp. 4, ECF No. 45. But as explained below, the Court finds that the letter contains important information "in order to determine whether the agency considered all of the relevant factors." *Burwell*, 786 F.3d at 55; *see infra* Discussion B.2. And the FCIC previously represented that the letter was "likely to become part of any new administrative record for a new manager's bulletin," Defs.' Mot. to Stay 3, ECF No. 18, so there is reason to believe that the FCIC "negligently excluded" the letter because it "may have been adverse to its decision," *see Burwell*, 786 F.3d at 55; *infra* Discussion B.2. Both reasons are sufficient for the Court to supplement the record with the Brisk Letter. Ex. A.

Second, Brisk seeks to supplement the record with the Farm Credit declaration. Ex. B. The Court agrees that the declaration possibly provides "background information" about the veracity of the documents used by the FCIC that would better position the Court "to determine whether the agency considered all of the relevant factors." *Burwell*, 786 F.3d at 55. But the Farm Credit

[2] The letter was drafted on April 3, 2026, but sent on April 6, 2026. *See* Ex. A.

declaration is not "needed" for this Court's review. *Id.*; *see infra* Discussion B.2. So, the Court declines to supplement the record with it.

Third, the FCIC seeks to introduce a declaration from the RMA administrator to "merely illuminate reasons obscured but implicit in the administrative record." Joint Status Report (June 15, 2026), at 2–3 (internal quotation marks and citation omitted). But the administrative record already includes a contemporary background paper explaining the FCIC's rationale for adopting the MGR-26-002.1 Bulletin. AR 1795–99. And most troubling, the declaration seems to respond to certain arguments in Brisk's briefing. *See, e.g.*, Swanson Decl. ¶ 43. When reviewing the administrative record on an APA challenge, a court must look only to "contemporaneous explanations for agency action" and review "is limited to the grounds that the agency invoked when it took the action." *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) (internal quotation marks and citation omitted). Accordingly, the Court declines to rely on the RMA administrator's declaration. *See id.* at 23 (instructing courts to disregard "*post hoc* rationalizations," "convenient litigating positions," and "belated justifications")." (cleaned up)).[3]

Finally, Brisk moves to strike parts of the FCIC's reply brief that it says raise new arguments. *See* Pl.'s Mot. to Strike. It is true that "[c]onsidering an argument advanced for the first time in a reply brief is not only unfair to [a litigant] but also entails the risk of an improvident or ill-advised opinion on the legal issues." *McBride v. Merrell Dow & Pharmaceuticals, Inc.*, 800

[3] Brisk filed a Motion to Exclude the Swanson Declaration, ECF No. 46, arguing that the Court should not consider the declaration in reaching its decision. It is unclear whether motion practice is the correct avenue to raise such a contention in this context of administrative review. Either way, the Court construes the motion as a supplemental brief asking the Court to decline to consider any post-hoc rationalizations offered by the agency. And the Court agrees that it should not consider such belated justifications. To the extent that Brisk's motion requests anything further, it is denied.

F.2d 1208, 1210 (D.C. Cir. 1986) (cleaned up). Accordingly, the Court will disregard any new arguments in the FCIC's brief.[4]

### 2. Standing

Turning to the Parties' substantive arguments, the FCIC contends that Brisk lacks Article III standing. Defs.' Mot. 15. "To establish Article III standing, a plaintiff must show (1) injury in fact that is concrete and particularized and actual or imminent rather than conjectural or hypothetical, (2) causation fairly traceable to the defendant's challenged action and (3) redressability by a favorable decision that is likely as opposed to merely speculative." *Am. Whitewater v. FERC*, 125 F.4th 1139, 1150 (D.C. Cir. 2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Here, the FCIC contests injury-in-fact and causation/traceability. Defs.' Mot. 15–19. The Court finds that neither prong is a barrier to Brisk's claims.

#### a. Injury-In-Fact

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks and citation omitted). The FCIC contends that Brisk lacks an injury-in-fact: (1) because the MGR-26-002.1 Bulletin is guidance that does not determine legal obligations, and (2) because "contract law bars third-party challenges to contract terms" like that of the SRA. Defs.' Mot. 14–16.

First, the FCIC cannot credibly claim that MGR-26-002.1 does not injure Brisk. The administrative record reveals that the bulletin was designed to prevent AIPs from using Brisk's services. *See infra* Discussion B.2. And the "monetary harm[]" resulting from AIPs ceasing to use

[4] Because the Court declines to address any arguments not before it, it denies the Motion to Strike, ECF No. 59, as moot. Striking is not necessary for the Court to decline to consider an argument.

Brisk's services will "readily qualify" as a concrete injury under Article III. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Indeed, both Parties recognize that [redacted] Pl.'s Mot. 18–19; Defs.' Mot. 18. Thus, these AIPs will no longer be able to use Brisk as service providers, despite their contractual arrangements to do so, because each plan must identify the service providers that AIP will use for the incoming reinsurance year. SRA App'x II, § IV(c) (AR 1832). This "future injury" suffices to show Article III injury-in-fact because "the threatened injury is certainly impending, [and] there is a substantial risk that the harm will occur" if the MGR-26-002.1 Bulletin remains in effect. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted).

Second, this case is an APA action, not a contract action. *See* Am. Compl. The FCIC argues that it is a "fundamental principle of contract law that only parties to a contract, or intended third-party beneficiaries, have standing to enforce or challenge that contract's terms." Defs.' Mot. 16. But Brisk does not challenge the terms of any contract. It brings an APA action challenging the promulgation of the MGR-26-002.1 Bulletin. So the FCIC's puzzling argument sounding in contract law is entirely inapplicable.

**b. Causation and Traceability**

Next, the FCIC argues that Brisk cannot demonstrate causation or traceability for its alleged harms because the AIPs that terminate any contracts are an intervening cause of Brisk's alleged injuries. Defs.' Mot. 18–19. But this argument confuses Article III and proximate causation. "Proximate causation is not a requirement" for standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). "Article III 'requires no more than *de*

*facto* causality,'" *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986))—thus, the "injury produced by determinative or coercive effect" of the FCIC's action is sufficient, *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Agency action need not be the only step or even "the very last step" in the Article III causal chain. *Id.*

Undoubtedly, the MGR-26-002.1 Bulletin creates a substantial risk of monetary harm to Brisk because it labels Brisk's business model as a "scheme or device" that violates the SRA. *See infra* Discussion B.2. So Brisk will almost certainly need to either cease its current operations or change its business model. Otherwise, AIPs are unlikely to continue using Brisk as a service provider out of fear that they may violate the SRA's scheme or device bar or agent compensation cap. This is sufficient to establish causation and traceability. *See Energy Future Coal. v. EPA,* 793 F.3d 141, 144 (D.C. Cir. 2015) (biofuel producers had standing to challenge a rule prohibiting non-party manufacturers from using biofuel in emissions testing, because there was "substantial reason to think that at least some vehicle manufacturers would use" biofuel if that option were legally permitted); *Tozzi v. HHS*, 271 F.3d 301, 307–11 (D.C. Cir. 2001) (manufacturer had standing to challenge an agency decision classifying a chemical in its product as a known carcinogen, based on evidence that third parties would be more likely to buy the product without the classification). Brisk's impending "monetary" injuries are fairly traceable and caused by the FCIC. *TransUnion*, 594 U.S. at 425.

### 3. Final Agency Action

The FCIC next argues that the MGR 26-002.1 Bulletin does not constitute final agency action because it is merely interpreting the SRA rather than imposing rights, obligations, or legal consequences. Defs.' Mot. 20–22. The Court disagrees.

The APA only permits review of a "final agency action." 5 U.S.C. § 704. An agency action is final if it is (1) "the consummation of the agency's decisionmaking process," and (2) an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Rhea Lana, Inc. v. Dep't of Lab.*, 824 F.3d 1023, 1026–27 (D.C. Cir. 2016) (quoting *Bennett*, 520 U.S. at 177–78). Whether rights or obligations have been determined or "'legal consequences will flow' from an agency action is a 'pragmatic' inquiry." *Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 956 (D.C. Cir. 2019) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016)). "[A]n agency may not avoid judicial review merely by choosing" a specific form of agency action or otherwise simply "express[ing] its definitive position on a general question of . . . interpretation." *CSI Aviation Servs., Inc. v. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011) (quoting *Ciba-Geigy Corp. v EPA*, 801 F.2d 430, 438 n.9 (D.C. Cir. 1986)). The inquiry's focus is on the "concrete consequences" of the "agency action" at issue. *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 637 (D.C. Cir. 2019).

Applying this pragmatic approach, the FCIC's argument does not carry the day. The administrative record shows that the FCIC designed the MGR-26-002.1 Bulletin to "effectively prohibit[]" AIPs from "buying" Brisk's software and to "bar[]" Brisk "from selling [its] products" under its current business model. *See Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (holding that FAA advisory circular was final agency action with "clear legal consequences of enormous significance" because new specifications prevented manufacturer from placing product on "list of FAA-approved products airports can buy" and "effectively prohibit[ed]" manufacturer "from selling [its] products to airports" in their current from); *infra* Discussion B.2. (internal agency documents making clear that the intended effect of MGR-26-002.1 was to end Brisk's business model).

Further, an agency action is final if it "announces a binding change in the law." *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 319 (D.C. Cir. 2011) (citation omitted). And as discussed below, MGR-26-002.1 changed the regulatory rules governing whether Brisk's software payments constitute agent compensation under the SRA. *See infra* Discussion B.2. Agent compensation under the SRA is explicitly defined "in accordance with FCIC procedures." SRA, §§ I, III(a)(4) (AR 489, 512–13). And the FCIC concedes that "Manager's Bulletins"—such as MGR-26-002.1—because they are "incorporated into the SRA as FCIC procedures, [and] are binding on AIPs." Defs.' Mot. 6, 15, 21; *see also* AR 490, 498, 525. [redacted] Since the MGR-26-002.1 Bulletin altered that guidance, Brisk suffers the real "legal consequence[]" of no longer being able to rely on that exemption to sustain its business model. *Ipsen Biopharmaceuticals*, 943 F.3d at 956 (citation omitted).

The Court thus has no difficulty in concluding that the MGR-26-002.1 Bulletin is final, binding agency action.

**4. Zone of Interests**

Rounding out the FCIC's threshold arguments is the contention that Brisk's APA claim falls outside the Federal Crop Insurance Act's zone of interests. Defs.' Mot. 19–20. This argument fails, too.

The "zone-of-interests test" is a non-onerous inquiry into "'whether [the APA] grants [a] plaintiff the cause of action that he asserts.'" *Food & Drug Admin. v. R. J. Reynolds Vapor Co.*, 606 U.S. 226, 232 n.3 (2025) (quoting *Bank of America Corp. v. Miami*, 581 U.S. 189, 196–97

(2017)). "Put differently, a plaintiff must belong to the class of persons to whom the statute grants a right to sue." *Id.* at 232. As relevant here, the APA's cause of action "entitles anyone 'adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . to judicial review.'" *Id.* (quoting 5 U.S.C. § 702). "[T]he 'relevant statute' for an APA zone-of-interests analysis is not the APA itself, but the statute under which the relevant agency acted." *Id.* at 232 n.4 (citing *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)).

The term "adversely affected" in the APA is "a term of art with a 'long history in federal administrative law.'" *Id.* at 232 (quoting *Dir. Off. of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 126 (1995)). The term is "capacious" and construed "broadly"—to be a person "adversely affected" is "not especially demanding." *Id.* at 232–33 (quoting *Lexmark*, 572 U.S. at 130). A plaintiff satisfies the test if he is someone that Congress arguably "intended . . . to be relied upon to challenge agency disregard" of the relevant law. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987) (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984)). "[A]nyone even arguably within the zone of interests to be protected or regulated by the" relevant statute is "cover[ed]." *R. J. Reynolds*, 606 U.S. at 233 (cleaned up). To fail the test, the plaintiff's "interests [should be] so marginally related to or inconsistent with the purposes implicit in the [relevant] statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (quoting *Clarke*, 479 U.S. at 399).

Here, the relevant statute under which the FCIC acted is the Federal Crop Insurance Act, 7 U.S.C. § 1501 *et seq.* So the zone of interest encompasses any "interest arguably sought to be protected" or regulated under that Act. *R. J. Reynolds*, 606 U.S. at 236 (quoting *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011)). Brisk's "grievance" clearly suffices. *See Am. Inst. of Certified Pub. Accts. v. Internal Revenue Serv.*, 746 F. App'x 1, 7 (D.C. Cir. 2018).

For one thing, Brisk is a regulated party, which places it directly within the zone of interests of the crop insurance program. *See R. J. Reynolds*, 606 U.S. at 237. Brisk is a "service provider," under the SRA. AR 8. And the SRA prescribes the rules and conditions under which a service provider may remain in the crop insurance program. AR 498–99, 525. In addition, Brisk participates in the federal crop insurance market as a vendor. It thus "lose[s] the opportunity to profit from the sale of" its "product[s]" based on the FCIC's regulatory decisions like its manager bulletins. *R. J. Reynolds*, 606 U.S. at 236. "Given this significant, direct impact" on its profits, Brisk's "interests are not 'so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* (quoting *Clarke*, 479 U.S. at 399). Accordingly, Brisk is "adversely affected" by MGR-26-002.1 and can properly institute an action for this grievance under the APA. *Id.*

**B. Merits**

Having cleared the threshold hurdles, the Court moves to the merits of Brisk's APA claims. Brisk contends (1) that the FCIC lacks the statutory authority to issue the MGR-26-002.1 Bulletin, and (2) that MGR-26-002.1 is arbitrary and capricious. Brisk fails on its first argument but succeeds on its second.[5]

**1. Statutory Authority**

Brisk argues that the RMA lacks the statutory authority to issue MGR-26-002.1. Pl.'s Mot. 20–23. The Court disagrees.

The Federal Crop Insurance Act provides that "reinsurance shall be provided on such terms and conditions as the Board may determine to be consistent with subsections (b) and (c) and sound

---

[5] Brisk also argues that the RMA failed to undertake notice-and-comment rulemaking for the MGR-26-002.1 Bulletin. Because the Court finds that MGR-26-002.1 is arbitrary and capricious, it need not reach this argument.

reinsurance principles." 7 U.S.C. § 1508(k)(2).[6] And the MGR-26-002.1 Bulletin merely governs the subsidization of agent compensation pursuant to the SRA, a contractual arrangement to "obtain reinsurance from [the] FCIC." *ACE Am. Ins.*, 732 F. App'x at 6. This seems to end the matter.

Brisk argues that this provision of the Federal Crop Insurance Act does not cover agent compensation because agent compensation does not appear in "Section II of the SRA [which] is 'Reinsurance'"; instead, it appears in "Section III [which] is "Subsidies, Expenses, Fees, and Payments." Pl.'s Opp'n 6. And Brisk points out that "MGR-26-002.1 addresses the cap and schemes or devices, not reinsurance." *Id.* But Brisk misunderstands the SRA. The SRA is a contract "negotiated between [the] FCIC and the private crop insurance industry" to "obtain reinsurance from [the] FCIC." *ACE Am. Ins.*, 732 F. App'x at 6. Undoubtedly, AIPs would not be entitled to subsidies for administrative and operative expenses without having contracted to be part of the Federal Crop Insurance Program. The administrative and operating expenses merely constitute part of the consideration in return for joining the reinsurance program under the SRA. *See ACE Am. Ins.*, 732 F. App'x at 6 (cleaned up). So regulating these subsidies, including agent compensation, is clearly within the RMA's power to "determine" the "terms and conditions" under which "reinsurance shall be provided." 7 U.S.C. § 1508(k)(2). To hold otherwise would be to ignore the agency's role to "supervise[] and administer[] the federal crop insurance program." *ACE Am. Ins.*, 732 F. App'x at 6 (characterizing 7 U.S.C. § 6933).

---

[6] Subsection (b) governs "Catastrophic risk protection" and subsection (c) is "General coverage levels." 7 U.S.C. § 1508(b), (c).

### 2. Arbitrary and Capricious

Brisk next argues that the MGR-26-002.1 Bulletin is arbitrary and capricious. Pl.'s Mot. 28. The Court agrees that MGR-26-002.1 is arbitrary and capricious because it fails to comply with the change-in-position doctrine mandated by the APA.

The APA instructs courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). "Under this standard, an agency must engage in reasoned decision making." *Sinclair Wyoming Ref. Co. LLC v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024) (citing *Michigan v. EPA*, 576 U.S. 743, 750 (2015)). To do so, the agency must "examine the relevant data and articulate a satisfactory explanation for its action." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (cleaned up). An agency acts arbitrarily and capriciously if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Importantly, the arbitrary and capricious "standard demands that an agency give a reasoned justification for its decision to alter an existing regulatory scheme." *Farmers Union Cent. Exch., Inc. v. FERC*, 734 F.2d 1486, 1500 (D.C. Cir. 1984). Courts have termed this principle the "change-in-position doctrine." *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025). "An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *Fox Television*, 556 U.S. at 515 (citing *United States v. Nixon*, 418 U.S. 683, 696 (1974)). "And of course the agency must show that there are good reasons for the new policy," *id.*—agencies are "free to change their existing policies as long as

they provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests," *Wages & White Lion*, 604 U.S. at 568 (cleaned up). The doctrine also applies to "deviation from prior practice and precedent, even if there had been no previous formal policy." *CSL Plasma Inc. v. CBP*, 628 F. Supp. 3d 243, 259 (D.D.C. 2022) (collecting cases). An agency is not free to disregard this doctrine—"silence in the face of inconvenient precedent is not acceptable." *NLRB v. CNN Am., Inc.*, 865 F.3d 740, 751 (D.C. Cir. 2017) (cleaned up). "[I]t is elementary that an agency must conform to its prior decisions or explain the reason for its departure from such precedent." *Id.* (cleaned up).

The change-in-position inquiry involves two steps. First, the court asks whether the agency's "existing policy" changed. *Wages & White Lion*, 604 U.S. at 569. Second, the court asks whether "the agency display[ed] awareness that it is changing position and offer[ed] good reasons for the new policy." *Id.* at 570 (cleaned up).

*Step One: Whether the Agency Changed Existing Policy*. To state the obvious, the FCIC changed its policy when adopting MGR-26-002 and MGR-26-002.1. Before those bulletins, the FCIC excluded software costs from agent compensation. But the bulletins added three scenarios in which software payments may constitute agent compensation.

[redacted] AR 1781, [redacted] AR 1782. The FCIC recognized the same for MGR-26-002.1:

[redacted]

[redacted]

AR 1793. And at the hearing on Brisk's emergency motion, the FCIC seemed to concede that it changed its position in adopting MGR-26-002. Mot. H'rg Tr. 78:8–20, ECF No. 17 ("[THE COURT:] The 2010 bulletin created an exception, it excluded the software from agent compensation; it's the software exception. There were no exceptions to that exception in 2010. In 2026, there are now three exceptions to that exception; there are three carveouts that did not exist in the 2010. How can you tell me that that is not a change? Did the three carveouts in the '26 bulletin exist in 2010; yes or no? [THE FCIC]: No. THE COURT: Okay. Do they exist in the 2026 bulletin; yes or no? [THE FCIC]: Yes, Your Honor.").

*Step Two: Whether the Agency Displayed Awareness that it is Changing Position and Offered Good Reasons for the New Policy.* Recall that an agency must "display awareness that they are changing position." *Wages & White Lion*, 604 U.S. at 568 (cleaned up). At first glance, MGR-26-002.1 seems to come up short on this front. Rather than explicitly confront the change, the FCIC says that it is "providing additional criteria for when payments made by an AIP to a service provider . . . will be deemed a benefit of value and considered compensation under the SRA." AR 1781. An agency's "refusal to concede that it changed its practices" may "preclude[] it from satisfying the APA's basic procedural requirements." *Am. Bar Ass'n v. DOE*, 370 F.Supp.3d 1, 32 (D.D.C. 2019). The FCIC argues that it satisfies the "awareness" requirement because MGR-26-002.1 explains why the three features warrant exclusion. Defs.' Reply 14. Ultimately, the Court need not confront whether the FCIC properly displayed awareness of its change in

position though. The FCIC flunks step two regardless because it failed to consider Brisk's reliance interests.

An agency changing its policy must "consider[] 'serious reliance interests.'" *Wages & White Lion*, 604 U.S. at 568 (cleaned up). That is because "[i]n explaining its changed position, an agency must also be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Encino Motorcars*, 579 U.S. at 221–22. And "it must consider any alleged reliance interests, even if it ultimately finds that the asserted reliance interests are weak or outweighed by other factors." *MediNatura, Inc. v. FDA*, 496 F. Supp. 3d 416, 456 (D.D.C. 2020), *aff'd*, 998 F.3d 931 (D.C. Cir. 2021). The record in this case makes clear that the FCIC failed to do just that.

On April 6, 2026, after it received notice that the FCIC was considering a new bulletin, Brisk emailed a letter to the FCIC seeking "clarification" of some "ambiguities" and "offer[ing] concrete suggestions drawn from existing RMA precedent and standard industry practices" for the new "three conditions" in MGR 26-002 should the FCIC consider re-promulgating them in the new bulletin. Ex. A, at 1. Among other things, the Brisk Letter (1) explained Brisk's concerns about these conditions based on its "reliance on prior RMA review"; (2) asked if the FCIC would consider alternatives to its financing requirements consistent with earlier guidance that Brisk had received from the FCIC; (3) asked for clarifications about the scope of these conditions so that Brisk could comply with the program rather than be targeted; (4) proposed alternatives to ensure that Brisk's relationship with Farm Credit would be at arm's length (*e.g.*, periodic reviews, annual certification, and an independent audit); (5) asked if the FCIC would consider a transition period before adopting a revised bulletin so that Brisk could renegotiate its contracts to be compliant with

these new conditions; and (6) offered "to provide any additional information that may be helpful as the [FCIC] prepare[d] the new bulletin." *Id.* at 1–8.

That email was not out of the ordinary. [redacted] — [redacted] *See* AR 16–163, 634–657, 879–899. [redacted] *See, e.g.*, AR 655–57, 1262. [redacted]. AR 130, 655–56. [redacted], [redacted]. AR 455, 655–56. So Brisk quite reasonably expected that the FCIC would consider Brisk's reliance in promulgating new guidance that would affect Brisk's business.

Yet the FCIC admits that the Brisk Letter in no way "might have influenced the agency's decision"; that the "mere fact that a letter was sent to the agency does not mean it was considered by" it. Defs.' Suppl. Resp. 4 (citation omitted). The Court agrees that "[n]ot every piece of correspondence an agency receives" should be part of the "decisional record for every action the agency takes." *Id.* at 4–5. But an agency is also not permitted to "entirely fail[] to consider an important aspect of the problem" that it is trying to address. *State Farm*, 463 U.S. at 43.

Here, in the background paper that accompanied MGR-26-002.1, [redacted] AR 1796. [redacted]

AR 1791–95. [redacted] AR 1796; [redacted] AR 1797; and [redacted] AR 1799.

By placing Brisk at the center of its change in policy, the FCIC clearly ignored "an important aspect of the problem" when it failed to even consider the views, arguments, and interests presented by Brisk while it was promulgating the change. *State Farm*, 463 U.S. at 43. Reasoned decision-making does not require "analyz[ing] every issue or alternative . . . no matter how insubstantial," *Thompson v. Clark*, 741 F.2d 401, 408 (D.C. Cir. 1984) (cleaned up), but an agency must consider "points relevant to the agency's decision" or that "cast doubt on the reasonableness of a position taken," *see Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 215 (D.C. Cir. 2013) (cleaned up).

Here, the Brisk Letter contained a number of alternatives to MGR-26-002.1 that received no consideration by the FCIC. As even the FCIC admits, the Brisk Letter contained a "detailed, condition-by-condition critique" of the three factors in MGR-26-002.1, "propose[d] clarifications" and "modifications" to MGR-26-002.1, and "advocate[d] for different implementation details." Defs.' Suppl. Resp. 6–8. Brisk went further still. Assuming that a change in policy was inevitable, Brisk asked that the FCIC delay the bulletin's effective date so that Brisk could renegotiate its contracts to reflect MGR-26-002.1 as opposed to the prior MGR-10-011.1 on which they were

based. *See* Ex. A, at 7. An agency acts arbitrarily and capriciously when it "refuses to consider" such "significant and viable and obvious alternatives," "evidence contradicting its position," or matters "bearing on the issue before it." *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (cleaned up); *Burwell*, 786 F.3d at 59 (quoting *Jones*, 716 F.3d at 215). That is especially true here where the MGR-26-002.1 Bulletin had the possibility "of upsetting [Brisk's] prior expectations . . . . in a manner that [might] make[] worthless substantial past investment incurred in reliance" on things as they stood before. *Bd. of Cnty. Commissioners of Weld Cnty. v. EPA*, 72 F.4th 284, 295 (D.C. Cir. 2023) (cleaned up).

[redacted] AR 1796; *see also* AR 1792 [redacted] AR 1796 [redacted] AR 1797 [redacted]

[redacted]). [redacted] *See* Pl.'s Mot. 33–34. [redacted]—[redacted] AR 189–94. [redacted] *See* Discussion A.1; Swanson Decl. ¶ 43. But the administrative record does not reveal how the FCIC's decision-making would have changed based on different evidence. And "*post hoc* rationalizations," "convenient litigating positions," and "belated justifications" are not properly before the Court. *Regents of the Univ. of California*, 591 U.S. at 20 (cleaned up). [redacted] The fact remains that the FCIC failed to consider Brisk's views when it ignored the Brisk Letter sent on April 6, 2026. The FCIC's failure to do so was arbitrary and capricious.

Importantly, the Court stresses the narrow nature of its ruling in three respects. First, an agency need not consider or respond to every email that it receives during its decision-making

process. It need only weigh evidence central to the problem that it seeks to address. But when the problem in question centers on a single regulated entity, the agency may not ignore the views of that entity submitted through established channels during the decision-making process. Second, the Court does not hold that an entity's reliance interests control in this context such that any change in position is arbitrary. Rather, reasoned decision-making merely requires the agency to weigh those reliance interests against other relevant factors before it determines that they are outweighed. Finally, the Court takes no position on whether the policy adopted in the MGR-26-002.1 Bulletin is sound. It may well be that Brisk's business model is harmful and should not be sustained. That decision rests, as it should, with the FCIC. But in making a change to existing policy, the FCIC must comply with the APA. Today's decision says only that the FCIC failed to do so.

## REMEDY

The APA mandates that a "reviewing court *shall* . . . hold unlawful and set aside agency action" that is in arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A) (emphasis added). Accordingly, the Court sets aside the MGR-26-002.1 Bulletin.

## CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's Motion for Summary Judgment, ECF No. 40-3, and denies the FCIC's Motion to Dismiss (or in the alternative Motion for Summary Judgment), ECF No. 43-2.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: June 24, 2026